## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2592 |
| MELISSA ANDERSON, CYNTHIA BAILEY, BONNIE BAKER & JAMES BAKER, CHARLES BAWCOM, INGRID BILLUPS INDIVIDUALLY AND ON BEHALF OF BYRON BILLUPS (deceased), TERRY BLUM & TRACY BLUM, MARGARET BROWN & ELIAS BROWN, WILLIAM BROWN & BEVERLY BROWN, MARGERY BRUCE & GENE BRUCE, MICHELLE CAMMARATA INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOSEPH CAMMARATA (deceased), PAMELA CAMPBELL, RONALD CANADAY & MARILYN CANADAY, ETHEL CLAGGETT, DONALD COX, HENRY DAHMS & ROSE DAHMS JR, BRUCE DAVID, VELMA DILE & WILLIAM HEFTY, GLENDA DONDLE & STANLEY DONDLE, JOYCE NAVARRO INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF RUTH DYNES (deceased), MARY EDMONDSON, DEVRA EDWARDS INDIVIDUALLY AND ON BEHALF OF HENRY EDWARDS (deceased), BILLY EVANS & SUSAN EVANS, JOHN FARLEY, PHILLIP FORD, PHILLIP HARRIS & BILLIE HARRIS, NICKOLAUS HILDEBRANDT & DORIS HILDEBRANDT, WILLIAM HOID & TINA TRACY, ROBERT HUMPHRIES & KATHY HUMPHRIES, JOAN HUNT, DELORES JAMISON & GEORGE JAMISON, ROBERT JENKINS III, DONALD JOHNSON & JOSEPHINE JOHNSON, KEVIN JONES, STEPHEN KLEEKAMP, BARBARA KLIROS, RANDY LANGSTON, HENRY LAUN, PETER LECHO & VICKIE LECHO, JOYCE LEUTHAUSER, LEON LEWIS & DELORES LEWIS, DIANA LIBBY & KEITH LIBBY, NICKOLAS MAINIERI & DOROTHY MAINIERI, JAMES MAY, JOHN MCBRIDE & EVAUGHN MCBRIDE, THELMA | SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE NORTH<br><br>JURY TRIAL DEMANDED |

MCDANIELS, THOMAS MICHEL & NELLIE MICHEL, GERALDINE MOHRLE, KANDYCE MOORE & ORLANDS MOORE, JOHN MULDER & WILMA MULDER, JOANNE MURPHY & THOMAS MURPHY, MARJORIE MURPHY & JIMMY MURPHY, DONALD NELSON, PENNY NORTHINGTON & KEITH ASH, LARRY O'DELL & JUDY O'DELL, MYREICE JAMES INDIVIDAULLY AND ON BEHALF OF THE ESTATE OF TOLLICE PAYNE JR. (deceased), GARY PEARSON, ROBERT PRICE & VICKIE PRICE, MICHAEL RAMSEY, LOTTIE REVELS & LONNIE REVELS, LAJEANE ROBINSON, GARY ROSEBORO, TERRY ROSS & BARBARA ROSS, VERNON SCHOEN & LINDA SCHOEN, THOMAS SCHWINDT & CHERYL SCHWINDT, LEE SEVIER III & CAROL SEVIER, PATRICIA SHOULDERS INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF FRANK SHOULDERS, (deceased), BYRHL SIMPSON & VICKI SIMPSON, DALE SMITH, MARGARET SNODGRASS, JUANITA STEIN & HENRY STEIN JR., WILLIAM STEINHEIMER & MARGARET STEINHEIMER, ALBERTA STOLTZ INDIVIDUALLY AND ON BEHALF OF THOMAS STOLTZ (deceased), CAROLYN STRAUTMANN & PAUL STRAUTMANN, ESTELLE STRAW & JOHN STRAW, BEVERLY THOMPSON, JANET VAN WINKLE, GEORGE WADE, SHERI WALKER & ANDY WALKER, MARY WALLER, BERTHA WRIGHT-MIMS & AD MIMS,

            Plaintiffs,

    v.

JANSSEN RESEARCH & DEVELOPMENT LLC f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT LLC, JANSSEN ORTHO LLC, JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICA INC. f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.,

JOHNSON & JOHNSON,
BAYER HEALTHCARE PHARMACEUTICALS,
INC.,
BAYER PHARMA AG,
BAYER CORPORATION,
BAYER HEALTHCARE LLC,
BAYER HEALTHCARE AG, and BAYER AG,

       Defendants.

## COMPLAINT

COMES NOW, the above named Plaintiffs by and through their undersigned counsel, upon information and belief, at all times hereinafter mentioned, allege as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between the Plaintiffs and the Defendants.

2.    This Court has personal jurisdiction over the Defendants because they have done business in the State of Louisiana, have committed a tort in whole or in part in the State of Louisiana, have substantial and continuing contact with the State of Louisiana, and derive substantial revenue from goods used and consumed within the State of Louisiana. The Defendants actively sell, market and promote its pharmaceutical product Xarelto to physicians and consumers in this state on a regular and consistent basis.

3.    Venue in this district is proper because the United States Judicial Panel on Multi-District Litigation issued a Transfer Order to centralize this litigation in the Eastern District of Louisiana, MDL 2592, and pursuant to Pre-Trial Order No.9 entered on March 24, 2015 in *In Re: Xarelto (Rivaroxaban) Products Liability Litigation.*

## NATURE OF THE CASE

4.    Plaintiffs used Xarelto, also known as rivaroxaban, which is a medication used to reduce

the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat deep vein thrombosis (hereinafter referred to as "DVT") and pulmonary embolism (hereinafter referred to as "PE"), to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

5.     Defendants, JANSSEN RESEARCH & DEVELOPMENT LLC f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT LLC, JANSSEN ORTHO LLC, JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICA INC. f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., JOHNSON & JOHNSON, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER PHARMA AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE AG, and BAYER AG (hereinafter collectively referred to as "Defendants") designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Xarelto.

6.     When warning of safety and risks of Xarelto, Defendants negligently and/or fraudulently represented to the medical and healthcare community, the Food and Drug Administration (hereinafter referred to as the "FDA"), to Plaintiffs and the public in general, that Xarelto had been tested and was found to be safe and/or effective for its indicated use.

7.     Defendants concealed their knowledge of Xarelto's defects from Plaintiffs, the FDA, the public in general, and/or the medical community specifically.

8.     These representations were made by Defendants with the intent of defrauding and deceiving Plaintiffs, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense and/or purchase Xarelto for use to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or

PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of the Plaintiffs herein.

9.    Defendants negligently and improperly failed to perform sufficient tests, if any, on humans using Xarelto during clinical trials, forcing Plaintiffs, and Plaintiffs' physicians, hospitals, and/or the FDA, to rely on safety information that applies to other non-valvular atrial fibrillation treatment and DVT/PE treatment and prophylaxis, which does not entirely and/or necessarily apply to Xarelto whatsoever.

10.    As a result of the foregoing acts and omissions, the Plaintiffs were and still are caused to suffer serious and dangerous side effects including, inter alia, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings. Plaintiffs herein has sustained certain of the above health consequences due to Plaintiff's use of Xarelto.

11.    Defendants concealed their knowledge of the defects in their products from the Plaintiff, and Plaintiff's physicians, hospitals, pharmacists, the FDA, and the public in general.

12.    Consequently, Plaintiffs seek compensatory damages as a result of their use of the Xarelto, which has caused Plaintiffs to suffer from life-threatening bleeding, as well as other severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for medical treatment, monitoring and/or medications, and loss of earnings.

13.    The Consortium Plaintiffs seek compensatory damages as result of Plaintiffs' use of Xarelto and resulting injures. Consortium Plaintiffs have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services,

society, companionship, love and comfort.

## PLAINTIFF-SPECIFIC
## ALLEGATIONS

14.    Plaintiff MELISSA ANDERSON at all times relevant hereto, are citizens and residents of Henrico County, Virginia.

      (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around August 01, 2014, upon direction of her physician for the treatment of deep vein thrombosis.

      (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about August 05, 2014, and August 08, 2014.

15.    Plaintiff CYNTHIA BAILEY at all times relevant hereto, are citizens and residents of St. Louis City County, Missouri.

      (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around March 15, 2013, upon direction of her physician for the treatment of atrial fibrillation.

      (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about September 24, 2014 through December 16, 2014 and January 06, 2015.

16.    BONNIE BAKER and Consortium Plaintiff JAMES BAKER at all times relevant hereto, are citizens and residents of Fort Bend County, Texas.

      (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around May 01, 2014, upon direction of her physician for the treatment of atrial fibrillation.

(b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding on September 16, 2014 and October 18, 2014.

17.   Plaintiff CHARLES BAWCOM at all times relevant hereto, are citizens and residents of Escambia County, Florida.

(a)   Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December of 2013, upon direction of his physician for the treatment of atrial fibrillation.

(b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about April 11, 2014, May 28, 2014, and June 29, 2014.

18.   Plaintiff INGRID BILLIUPS (individually and on behalf of THE ESTATE OF BYRON BILLUPS (DECEASED)) at all times relevant hereto, are citizens and residents of Saint Louis County, Missouri.

(a)   Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around July 01, 2015, upon direction of his physician for the treatment of deep vein thrombosis.

(b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about July 21, 2015, and suffered a wrongful death on July 24, 2015.

19.   Plaintiff TERRY BLUM and Consortium Plaintiff TRACY BLUM at all times relevant hereto, are citizens and residents of Johnson County, Missouri.

(a)   Upon information and belief, Plaintiff was prescribed and began using

Xarelto on or around December 26, 2014, upon direction of his physician for the treatment of thrombophlebitis.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 31, 2014.

20.    Plaintiff MARGARET BROWN and Consortium Plaintiff ELIAS BROWN at all times relevant hereto, are citizens and residents of Charleston County, South Carolina.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around April 04, 2014, upon direction of her physician for the treatment of pulmonary embolism.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about July 07, 2014.

21.    Plaintiff WILLIAM BROWN and Consortium Plaintiff BEVERLY BROWN at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around May 07, 2014, upon direction of his physician for the treatment of atrial fibrillation and deep vein thrombosis.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about September 02, 2014.

22.    Plaintiff MARGERY BRUCE and Consortium Plaintiff GENE BRUCE at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

(a)  Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around July 30, 2013, upon direction of her physician for the treatment of deep vein thrombosis.

(b)  As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about July 31, 2013.

23.    Plaintiff MICHELLE CAMMARATA, (individually and on behalf of THE ESTATE OF JOSEPH CAMMARATA (DECEASED)) at all times relevant hereto, are citizens and residents of St. Louis City County, Missouri.

(a)  Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around June 06, 2013, upon direction of his physician for the treatment of atrial fibrillation.

(b)  As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, July 27, 2014 and suffered a wrongful death on July 28, 2014.

24.    Plaintiff PAMELA CAMPBELL at all times relevant hereto, are citizens and residents of St. Clair County, Illinois.

(a)  Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around June 11, 2014, upon direction of her physician for the treatment of deep vein thrombosis.

(b)  As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about August 16, 2014, August 26, 2014, November 06, 2014 and November 17, 2014.

25.    Plaintiff RONALD CANADAY and Consortium Plaintiff MARILYN CANADAY at all times relevant hereto, are citizens and residents of Platte County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around July 12, 2013, upon direction of his physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 02, 2014, December 16, 2014.

26.    Plaintiff ETHEL CLAGGETT at all times relevant hereto, are citizens and residents of Clay County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around February 05, 2014, upon direction of his physician for the treatment of pulmonary embolism.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about February 12, 2014.

27.    Plaintiff DONALD COX at all times relevant hereto, are citizens and residents of St. Louis City County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around June 21, 2014, upon direction of his physician for the treatment of deep vein thrombosis.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about

November 20, 2014.

28.    Plaintiff HENRY DAHMS JR. and Consortium Plaintiff ROSE DAHMS at all times relevant hereto, are citizens and residents of Dent County, Missouri.

        (a)   Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 04, 2013, upon direction of his physician for the treatment of atrial fibrillation.

        (b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about January 29, 2014 and April 29, 2014.

29.    Plaintiff BRUCE DAVID at all times relevant hereto, are citizens and residents of Orange County, Florida.

        (a)   Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around June of 2013, upon direction of his physician for the treatment of atrial fibrillation.

        (b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about August 16, 2013.

30.    Plaintiff VELMA DILE and Consortium Plaintiff WILLIAM HEFTY at all times relevant hereto, are citizens and residents of Lincoln County, Missouri.

        (a)   Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around June 24, 2014, upon direction of her physician for the treatment of deep vein thrombosis.

        (b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff

experienced dysfunctional internal bleeding, including on or about January 17, 2015.

31.    Plaintiff GLENDA DONDLE and Consortium Plaintiff STANLEY DONDLE at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around July 24, 2012, upon direction of her physician for the treatment of pulmonary embolism.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October 12, 2012.

32.    Plaintiff JOYCE NAVARRO (individually and on behalf of THE ESTATE OF BETTYE DYNES (DECEASED)) at all times relevant hereto, are citizens and residents of Sacramento County, California.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around September 28, 2014, upon direction of her physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October 09, 2014 and suffered a wrongful death on October 15, 2014.

33.    Plaintiff MARY EDMONDSON at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 19, 2011, upon direction of her physician

for the treatment of atrial fibrillation.

(b) As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about September 26, 2014.

34.   Plaintiff DEVRA EDWARDS (Individually and on behalf of THE ESTATE OF HENRY (DECEASED)), is a citizen and resident of Shelby County, Tennessee.

(a) Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around July 28, 2014, upon direction of his physician for the treatment of atrial fibrillation.

(b) As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about January 10, 2015 and suffered a wrongful death on January 11, 2015. Plaintiff was a resident of Saint Clair County in the state of Illinois at the time of his ingestion of Xarelto, dysfunctional internal bleeding, and death.

35.   Plaintiff BILLY EVANS and Consortium Plaintiff SUSAN EVANS at all times relevant hereto, are citizens and residents of Liberty County, Texas.

(a) Upon information and belief, Plaintiff was prescribed and began using Xarelto on or September 12, 2014, upon direction of his physician for the treatment of deep vein thrombosis.

(b) As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about September 29, 2014.

36.   Plaintiff JOHN FARLEY at all times relevant hereto, are citizens and residents of St. Louis

County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 04, 2013, upon direction of his physician for the treatment of deep vein thrombosis.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 08, 2013.

37.    Plaintiff PHILLIP FORD at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around August 29, 2013, upon direction of his physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about November 08, 2013.

38.    Plaintiff PHILLIP HARRIS and Consortium Plaintiff BILLIE HARRIS at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 06, 2013, upon direction of his physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 31, 2013.

39. Plaintiff NICKOLAUS HILDEBRANDT and Consortium Plaintiff DORIS HILDEBRANDT at all times relevant hereto, are citizens and residents of Saint Louis County, Missouri.

    (a) Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around March 31, 2014, upon direction of his physician for the treatment of atrial fibrillation.

    (b) As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about April 8, 2014.

40. Plaintiff WILLIAM HOID and Consortium Plaintiff TINA TRACY at all times relevant hereto, are citizens and residents of Madison County, Illinois.

    (a) Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around July 24, 2014, upon direction of his physician for the treatment of atrial fibrillation.

    (b) As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about September 11, 2014.

41. Plaintiff ROBERT HUMPHRIES and Consortium Plaintiff KATHY HUMPHRIES at all times relevant hereto, are citizens and residents of Cherokee County, Georgia.

    (a) Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around February 06, 2014, upon direction of his physician for the treatment of deep vein thrombosis.

    (b) As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff August 26, 2014.

42.    Plaintiff JOAN HUNT at all times relevant hereto, are citizens and residents of Warren County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around October 07, 2013, upon direction of her physician for the treatment of deep vein thrombosis.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October 14, 2013.

43.    Plaintiff DELORES JAMISON and Consortium Plaintiff GEORGE JAMISON at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around February 21, 2013 upon direction of her physician for the treatment of deep vein thrombosis.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about February 24, 2013.

44.    Plaintiff ROBERT JENKINS III at all times relevant hereto, are citizens and residents of St. Louis City County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around April 24, 2014, upon direction of his physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October

03, 2014.

45.     Plaintiff DONALD JOHNSON and Consortium Plaintiff JOSEPHINE JOHNSON at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around July 18, 2012, upon direction of her physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about August 13, 2013.

46.     Plaintiff KEVIN JONES at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 04, 2013, upon direction of her physician for the treatment of deep vein thrombosis.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about July 17, 2014.

47.     Plaintiff STEPHEN KLEEKAMP at all times relevant hereto, are citizens and residents of Franklin County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around November 27, 2013 upon direction of his physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff

experienced dysfunctional internal bleeding, including on or about December 08, 2013.

48.    Plaintiff BARBARA KLIROS at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around October 11, 2014, upon direction of her physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 30, 2014.

49.    Plaintiff RANDY LANGSTON at all times relevant hereto, are citizens and residents of Clay County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around August 27, 2014, upon direction of his physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October 18, 2014 and October 26, 2014.

50.    Plaintiff HENRY LAUN at all times relevant hereto, are citizens and residents of Norfolk County, Massachusetts.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around April 11, 2014, upon direction of his physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about November 23, 2014.

51.    Plaintiff PETER LECHO and Consortium Plaintiff VICKIE LECHO at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around April 25, 2014, upon direction of his physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about November 22, 2014.

52.    Plaintiff JOYCE LEUTHAUSER at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around January 15, 2014, upon direction of her physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about June 12, 2014.

53.    Plaintiff LEON LEWIS and Consortium Plaintiff DELORES LEWIS at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or October 21, 2014, upon direction of his physician for the

treatment of pulmonary embolism.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about November 02, 2014.

54.    Plaintiff DIANA LIBBY and Consortium Plaintiff KEITH LIBBY are citizens and residents of Comal County, Texas.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around September 01, 2013, upon direction of her physician for the treatment of deep vein thrombosis.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about June 09, 2014. Plaintiff was a resident of York County in the state of Main at the time of her Xarelto ingestion and dysfunctional bleeding.

55.    Plaintiff NICKOLAS MAINIERI and Consortium Plaintiff DOROTHY MAINIERI at all times relevant hereto, are citizens and residents of St. Charles County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around November 17, 2014, upon direction of his physician for the treatment of deep vein thrombosis.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about January 30, 2015.

56.    Plaintiff JAMES MAY at all times relevant hereto, are citizens and residents of St. Charles County, Missouri.

(a)     Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 27, 2013, upon direction of his physician for the treatment of deep vein thrombosis.

(b)     As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about April 27, 2014 and May 03, 2014.

57.     Plaintiff JOHN MCBRIDE and Consortium Plaintiff EVAUGHN MCBRIDE at all times relevant hereto, are citizens and residents of Randolph County, Illinois.

(a)     Upon information and belief, Plaintiff was prescribed and began using Xarelto on or August 15, 2014, upon direction of his physician for the treatment of deep vein thrombosis.

(b)     As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about February 18, 2015.

58.     Plaintiff THELMA MCDANIELS at all times relevant hereto, are citizens and residents of McLennan County, Texas.

(a)     Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around May 14, 2014, upon direction of her physician for the treatment of deep vein thrombosis.

(b)     As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about August 28, 2014, September 05, 2014, September 12, 2014, September 23, 2014, October 14, 2014, and December 22, 2014.

59.    Plaintiff THOMAS MICHEL and Consortium Plaintiff NELLIE MICHEL at all times relevant hereto, are citizens and residents of St. Charles County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 11, 2014, upon direction of his physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 25, 2014 and January 13, 2015.

60.    Plaintiff GERALDINE MOHRLE at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around January 07, 2014, upon direction of her physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October 22, 2014.

61.    Plaintiff KANDYCE MOORE and Consortium Plaintiff ORLANDS MOORE at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around February 25, 2013, upon direction of her physician for the treatment of deep vein thrombosis.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about May 25,

2014.

62.     Plaintiff JOHN MULDER and Consortium Plaintiff WILMA MULDER at all times relevant hereto, are citizens and residents of Johnson County, Kansas.

> (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 24, 2014, upon direction of his physician for the treatment of atrial fibrillation.

> (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about January 04, 2015.

63.     Plaintiff JOANNE MURPHY and Consortium Plaintiff THOMAS MURPHY at all times relevant hereto, are citizens and residents of Saint Clair County, Illinois.

> (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around April 24, 2012, upon direction of his physician for the treatment of atrial fibrillation.

> (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 23, 2014.

64.     Plaintiff MARJORIE MURPHY and Consortium Plaintiff JIMMY MURPHY at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

> (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 04, 2012, upon direction of her physician for the treatment of atrial flutter.

> (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff

experienced dysfunctional internal bleeding, including on or about February 23, 2013, February 25, 2013 and February 26, 2013.

65. Plaintiff DONALD NELSON at all times relevant hereto, are citizens and residents of Wyandotte County, Kansas

    (a) Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around June 19, 2014, upon direction of his physician for the treatment of atrial fibrillation.

    (b) As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about February 16, 2016.

66. Plaintiff PENNY NORTHINGTON and Consortium Plaintiff KEITH ASH at all times relevant hereto, are citizens and residents of St. Clair County, Illinois.

    (a) Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around September 19, 2014, upon direction of her physician for the treatment of deep vein thrombosis.

    (b) As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October 18, 2014 and November 12, 2014.

67. Plaintiff LARRY O'DELL and Consortium Plaintiff JUDY O'DELL at all times relevant hereto, are citizens and residents of Bond County, Illinois.

    (a) Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around July 16, 2014, upon direction of his physician for the treatment of deep vein thrombosis.

(b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about July 28, 2014.

68.   Plaintiff MYREICE JAMES (individually and on behalf of THE ESTATE OF TOLLICE PAYNE JR (DECEASED)) at all times relevant hereto, are citizens and residents of St. Louis City County, Missouri.

(a)   Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around October 04, 2013, upon direction of her physician for the treatment of deep vein thrombosis.

(b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October 15, 2013, and November 19, 2013, and suffered a wrongful death on December 18, 2013.

69.   Plaintiff GARY PEARSON at all times relevant hereto, are citizens and residents of St. Clair County, Illinois.

(a)   Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around August 18, 2014, upon direction of his physician for the treatment of deep vein thrombosis.

(b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 03, 2014

70.   Plaintiff ROBERT PRICE and Consortium Plaintiff VICKIE PRICE at all times relevant hereto, are citizens and residents of Jackson County, Missouri

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 31, 2011, upon direction of his physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about January of 2015 and January 31, 2015,

71.    Plaintiff MICHAEL RAMSEY at all times relevant hereto, are citizens and residents of Kay County, Oklahoma.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around May 02, 2014, upon direction of his physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about August 27, 2014 and September 18, 2014.

72.    Plaintiff LOTTIE REVELS and Consortium Plaintiff LONNIE REVELS at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around September 15, 2014, upon direction of her physician for the treatment of deep vein thrombosis.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October15, 2014.

73.    Plaintiff LAJEANE ROBINSON at all times relevant hereto, are citizens and residents of

Harris County, Texas.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around August 28, 2014, upon direction of her physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about September 12, 2014.

74.    Plaintiff GARY ROSEBORO at all times relevant hereto, are citizens and residents of St. Clair County, Illinois.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around September 01, 2014, upon direction of her physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about January 27, 2015.

75.    Plaintiff TERRY ROSS and Consortium Plaintiff BARBARA ROSS at all times relevant hereto, are citizens and residents of Caldwell County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around May 30, 2013, upon direction of his physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about March 05, 2014 and May 25, 2014.

76.    Plaintiff VERNON SCHOEN and Consortium Plaintiff LINDA SCHOEN at all times relevant hereto, are citizens and residents of Cape Girardeau County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around September 06, 2013, upon direction of his physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October 22, 2013.

77.    Plaintiff THOMAS SCHWINDT and Consortium Plaintiff CHERYL SCHWINDT at all times relevant hereto, are citizens and residents of Clay County, Missouri

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around July 05, 2014, upon direction of his physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about January 11, 2015.

78.    Plaintiff LEE SEVIER III and Consortium Plaintiff CAROL SEVIER at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around January 23, 2014, upon direction of his physician for the treatment of deep vein thrombosis.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about March

21, 2014.

79.    Plaintiff PATRICIA SHOULDERS (individually and on behalf of THE ESTATE OF FRANK SHOULDERS (DECEEASED)) at all times relevant hereto, are citizens and residents of Jefferson County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around June 05, 2014, upon direction of his physician for the treatment of deep vein thrombosis.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about September 10, 2014 and suffered a wrongful death on September 12, 2014.

80.    Plaintiff BYRHL SIMPSON and Consortium Plaintiff VICKI SIMPSON at all times relevant hereto, are citizens and residents of Franklin County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around September 08, 2014, upon direction of his physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 25, 2014.

81.    Plaintiff DALE SMITH at all times relevant hereto, are citizens and residents of Crawford County, Arkansas.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around May 24, 2012, upon direction of his physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about June 13, 2014. Plaintiff also suffered acute respiratory distress on or about July 4, 2014 as a result of the anemia cause by the rectal bleeding that resulted from the use of Xarelto.

82.    Plaintiff MARGARET SNODGRASS at all times relevant hereto, are citizens and residents of Galveston County, Texas.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around January 08, 2014, upon direction of her physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about August 14, 2014.

83.    Plaintiff JUANITA STEIN and Consortium Plaintiff HENRY STEIN JR at all times relevant hereto, are citizens and residents of Saint Clair County, Illinois.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around February 04, 2012, upon direction of her physician as prophylaxis for thromboembolism.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about February 14, 2015.

84.    Plaintiff WILLIAM STEINHEIMER and Consortium Plaintiff MARGARET STEINHEIMER at all times relevant hereto, are citizens and residents of King County, Washington.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around April 25, 2013, upon direction of her physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 11, 2014.

85.    Plaintiff ALBERTA STOLTZ (individually and on behalf of THE ESTATE OF THOMAS STOLTZ (DECEASED)) at all times relevant hereto, are citizens and residents of Jefferson County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around March 05, 2013, upon direction of his physician for the treatment of pulmonary embolism and deep vein thrombosis.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about April 08, 2015, and suffered a wrongful death on May 24, 2015.

86.    Plaintiff CAROLYN STRAUTMANN and Consortium Plaintiff PAUL STRAUTMANN at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around November 01, 2012, upon direction of her physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about November 01, 2013.

87.    Plaintiff ESTELLE STRAW and Consortium Plaintiff JOHN STRAW at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around July 12, 2013, upon direction of her physician for the treatment of deep vein thrombosis.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about September 10, 2013 and September 24, 2013.

88.    Plaintiff BEVERLY THOMPSON at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around November 27, 2013, upon direction of her physician for the treatment of atrial fibrillation.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about September 10, 2014 and September 13, 2014.

89.    Plaintiff JANET VAN WINKLE at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

    (a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around December 16, 2013, upon direction of her physician for the treatment of deep vein thrombosis.

    (b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff

experienced dysfunctional internal bleeding, including on or about December 18, 2013.

90.    Plaintiff GEORGE WADE at all times relevant hereto, are citizens and residents of St. Louis County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around August 11, 2013, upon direction of his physician for the treatment of atrial fibrillation.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about August 05, 2016 to August 12, 2016.

91.    Plaintiff SHERI WALKER and Consortium Plaintiff ANDY WALKER at all times relevant hereto, are citizens and residents of Franklin County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around June 19, 2014, upon direction of his physician for the treatment of thrombophlebitis.

(b)    As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about December 04, 2014.

92.    Plaintiff MARY WALLER at all times relevant hereto, are citizens and residents of Jackson County, Missouri.

(a)    Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around October 21, 2014, upon direction of his physician for the treatment of atrial fibrillation and pulmonary embolism.

      (b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about October 26, 2014.

93.    Plaintiff BERTHA WRIGHT-MIMS and Consortium Plaintiff AD MIMS at all times relevant hereto, are citizens and residents of  St. Louis County, Missouri.

      (a)   Upon information and belief, Plaintiff was prescribed and began using Xarelto on or around May 29, 2012, upon direction of his physician for the treatment of atrial fibrillation.

      (b)   As a direct and proximate result of the use of Defendants' Xarelto, Plaintiff experienced dysfunctional internal bleeding, including on or about January 22, 2014.

## PARTY DEFENDANTS

94.    Upon information    and    belief,    Defendant    JANSSEN    RESEARCH    & DEVELOPMENT LLC f/k/a  JOHNSON AND JOHNSON RESEARCH   AND        DEVELOPMENT LLC (hereinafter referred to as "JANSSEN R&D") is a limited liability  company organized under the laws of New Jersey, with a principal place of business at One  Johnson & Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933.  Defendant JANSSEN R&D's sole member is Janssen Pharmaceuticals, Inc., which is a Pennsylvania corporation with a principal place of business at 1125 Trenton-Harbourton Road, Titusville, New Jersey 08560.  Accordingly, JANSSEN R&D is a citizen of Pennsylvania and New Jersey for purposes of determining diversity under 28 U.S.C. § 1332. Defendant JANSSEN R&D is the holder of the approved New Drug Application ("NDA") for Xarelto as  well as the supplemental NDA.

95.    As part of its business, JANSSEN R&D is involved in the research, development,  sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

96.    Upon information and belief, Defendant JANSSEN R&D has transacted and  conducted business in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

97.    Upon information and belief, Defendant JANSSEN R&D has derived substantial  revenue from goods and products used in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

98.    Upon information and belief, Defendant, JANSSEN R&D, expected or should  have expected its acts to have consequence within the United States of America and the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce within the United States and  the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

99.

100.    Upon information and belief, and at all relevant times, Defendant, JANSSEN R&D, was in the business of and did design, research, manufacture, test, advertise, promote,  market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the  primary  purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or  PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

101.    Upon information and belief, Defendant JANSSEN PHARMACEUTICALS, INC.  f/k/a JANSSEN        PHARMACEUTICA        INC.        f/k/a        ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. (hereinafter referred to as "JANSSEN PHARM") is a  Pennsylvania corporation, having a principal place of business at 1125 Trenton-Harbourton  Road, Titusville, New

Jersey 08560.

102.  As part of its business, JANSSEN PHARM is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

103.  Upon information and belief, Defendant, JANSSEN PHARM has transacted and conducted business in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

104.  Upon information and belief, Defendant, JANSSEN PHARM, has derived substantial revenue from goods and products used in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington

105.  Upon information and belief, Defendant, JANSSEN PHARM, expected or should have expected its acts to have consequence within the United States of America and the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce within the United States and the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

106.  Upon information and belief, and at all relevant times, Defendant, JANSSEN PHARM, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

107.  Upon information and belief, Defendant JANSSEN ORTHO LLC (hereinafter referred

to as "JANSSEN ORTHO") is a limited liability company organized under the laws of Delaware, having a principal place of business at State road 933 Km 0 1, Street Statero, Gurabo, Puerto Rico 00778. Defendant JANSSEN ORTHO is a subsidiary of Johnson & Johnson. The only member of JANSSEN ORTHO LLC is OMJ PR Holdings, which is incorporated in Ireland with a principal place of business in Puerto Rico. Accordingly, JANSSEN ORTHO LLC is a citizen of Delaware, Ireland and Puerto Rico for purposes of determining diversity under 28 U.S.C. § 1332.

108. As part of its business, JANSSEN ORTHO is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

109. Upon information and belief, Defendant, JANSSEN ORTHO has transacted and conducted business in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

110. Upon information and belief, Defendant, JANSSEN ORTHO, has derived substantial revenue from goods and products used in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

111. Upon information and belief, Defendant, JANSSEN ORTHO, expected or should have expected its acts to have consequence within the United States of America and the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce within the United States and the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

112. Upon information and belief, and at all relevant times, Defendant, JANSSEN ORTHO, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and

distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non- valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

113.    Upon information and belief, the Defendant, JOHNSON & JOHNSON (hereinafter referred to as "J&J) is a corporation organized under the laws of New Jersey with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933.

114.    As part of its business, Defendant J&J is and at all relevant times was involved in the research, development, packaging, labeling, sales, and/or marketing of pharmaceutical products including Xarelto. Defendant J&J manufactures, markets and sells a wide range of pharmaceutical products including Xarelto.

115.    Upon information and belief, Defendant J&J has transacted and conducted business in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

116.    Upon information and belief, Defendant J&J has derived substantial revenue from foods and products used in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

117.    Upon information and belief, Defendant J&J expected or should have expected its acts to have consequences within the United States of America and the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce within the United States, and the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington more particularly.

118.   Upon     information     and     belief,     Defendant     BAYER     HEALTHCARE
PHARMACEUTICALS, INC. is, and at all relevant times was, a corporation organized under the
laws of the State of Delaware, with its principal place of business in the State of New Jersey.

119.   Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known
as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc. and BAYER HEALTHCARE
PHARMACEUTICALS, INC. is the same corporate entity as Berlex, Inc. and Berlex Laboratories,
Inc.

120.   As part of its business, BAYER HEALTHCARE PHARMACEUTICALS, INC. is
involved in the research, development, sales, and marketing of pharmaceutical products including
Xarelto and rivaroxaban.

121.   Upon     information     and     belief,     Defendant,     BAYER     HEALTHCARE
PHARMACEUTICALS, INC., has transacted and conducted business in the States of Arkansas,
California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina,
Texas, Virginia, Kentucky, and Washington.

122.   Upon     information     and     belief,     Defendant,     BAYER     HEALTHCARE
PHARMACEUTICALS, INC., has derived substantial revenue from goods and products used in the
States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma,
South Carolina, Texas, Virginia, Kentucky, and Washington.

123.   Upon     information     and     belief,     Defendant,     BAYER     HEALTHCARE
PHARMACEUTICALS, INC., expected or should have expected its acts to have consequence within
the United States of America and the States of Arkansas, California, Florida, Georgia, Illinois, Kansas,
Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and
derived substantial revenue from interstate commerce within the United States and the States of

Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

124.  Upon information and belief, and at all relevant times, Defendant, BAYER HEALTHCARE PHARMACEUTICALS, INC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

125.  Upon information and belief, Defendant BAYER PHARMA AG is a pharmaceutical company domiciled in Germany.

126.  Defendant BAYER PHARMA AG is formerly known as Bayer Schering Pharma AG and is the same corporate entity as Bayer Schering Pharma AG. Bayer Schering Pharma AG is formerly known as Schering AG and is the same corporate entity as Schering AG.

127.  Upon information and belief, Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.

128.  Upon information and belief, Bayer Schering Pharma AG was renamed BAYER PHARMA AG effective July 1, 2011.

129.  As part of its business, BAYER PHARMA AG is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto and rivaroxaban.

130.  Upon information and belief, Defendant, BAYER PHARMA AG, has transacted and conducted business in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

131. Upon information and belief, Defendant, BAYER PHARMA AG, has derived substantial revenue from goods and products used in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington

132. Upon information and belief, Defendant, BAYER PHARMA AG, expected or should have expected its acts to have consequence within the United States of America and the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce within the United States and the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, more particularly.

133. Upon information and belief, and at all relevant times, Defendant, BAYER PHARMA AG, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

134. Upon information and belief, Defendant BAYER CORPORATION is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

135. Upon information and belief, Defendant BAYER CORPORATION is the sole member of BAYER HEALTHCARE LLC, which owns 100% of Schering Berlin, Inc., which owns 100% of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. As such, Defendant BAYER CORPORATION is a parent of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

136.   At relevant times, Defendant BAYER CORPORATION was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Xarelto.

137.   At relevant times, Defendant BAYER CORPORATION conducted regular and sustained business in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, by selling and distributing its products in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington and engaged in substantial commerce and business activity in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington.

138.   Upon information and belief, Defendant BAYER HEALTHCARE LLC is a limited liability company duly formed and existing under and by the virtue of the laws of the State of Delaware, with its principal place of business located in the State of New Jersey. BAYER HEALTHCARE LLC's sole member is Bayer Corporation, and is wholly owned by Bayer Corporation, which is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205. Accordingly, BAYER HEALTHCARE LLC is a citizen of Delaware, New Jersey, Indiana and Pennsylvania and California for purposes of determining diversity under 28 U.S.C. § 1332.

139.   Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC has transacted and conducted business in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce. Defendant BAYER

CORPORATION is the sole member of Defendant BAYER HEALTHCARE LLC.

140.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC expected or should have expected that its acts would have consequences within the United States of America and in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce.

141.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

142.    Upon information and belief, Defendant BAYER HEALTHCARE AG is a company domiciled in Germany and is the parent/holding company of Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC, and BAYER PHARMA AG.

143.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG has transacted and conducted business in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce.

144.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG expected or should have expected that its acts would have consequences within the United States of America, and in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts,

Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce.

145.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG exercises dominion and control over Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC., and BAYER PHARMA AG.

146.    Upon information and belief, Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

147.    Upon information and belief, Defendant BAYER AG is the third largest pharmaceutical company in the world.

148.    Upon information and belief, and at all relevant times Defendant BAYER AG is the parent/holding company of all other named Defendants.

149.    Upon information and belief, at all relevant times, Defendant BAYER AG has transacted and conducted business in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce.

150.    Upon information and belief, at all relevant times, Defendant BAYER AG expected or should have expected that its acts would have consequences within the United States of America, and in the States of Arkansas, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Missouri, Oklahoma, South Carolina, Texas, Virginia, Kentucky, and Washington, and derived substantial revenue from interstate commerce.

151.    Upon information and belief, at all relevant times, Defendant BAYER AG was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute

Xarelto for use as an oral anticoagulant, the primary purposes of which are to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

## FACTUAL BACKGROUND

152.  At all relevant times, Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Xarelto and rivaroxaban to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

153.  Defendants received FDA approval for Xarelto, also known as rivaroxaban, on July 1, 2011 for the prophylaxis of DVT and PE in patients undergoing hip replacement or knee replacement surgeries (NDA 022406).

154.  Defendants then received additional FDA approval for Xarelto to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation on November 4, 2011 (NDA 202439).

155.  The additional indication for treatment of DVT and/or PE and the reduction in recurrence of DVT and/or PE was added to the label on November 2, 2012.

156.  Defendants launched Xarelto in the United States (hereinafter referred to as the "U.S.") in 2011.

157.  Xarelto is an anticoagulant that acts as a Factor Xa inhibitor, and is available by prescription in oral tablet doses of 20mg, 15mg, and 10mg.

158.  Approval of Xarelto for the prophylaxis of DVT and PE in patients undergoing hip replacement or knee replacement surgeries was based on a series of clinical trials known as the

Regulation of Coagulation in Orthopedic Surgery to Prevent Deep Venous Thrombosis and Pulmonary Embolism studies (hereinafter referred to as the "RECORD" studies). The findings of the RECORD studies showed that rivaroxaban was superior to enoxaparin for thromboprophylaxis after total knee and hip arthroplasty (based on the Defendants' definition), accompanied by similar rates of bleeding. However, the studies also showed a greater incidence with Xarelto of bleeding leading to decreased hemoglobin levels and transfusion of blood. (Lassen, M.R., et al. *Rivaroxaban versus Enoxaparin for Thromboprophylaxis after Total Knee Arthroplasty*. N.Engl.J.Med. 2008;358:2776-86; Kakkar, A.K., et al. *Extended duration rivaroxaban versus short-term enoxaparin for the prevention of venous thromboembolism after total hip arthroplasty: a double-blind, randomised controlled trial*. Lancet 2008;372:31-39; Ericksson, B.I., et al. *Rivaroxaban versus Enoxaparin for Thromboprophylaxis after Hip Arthroplasty*. N.Engl.J.Med. 2008;358:2765-75.)

159. Approval of Xarelto for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation in the U.S. was based on a clinical trial known as the Rivaroxaban Once Daily Oral Direct Factor Xa Inhibition Compared with Vitamin K Antagonism for Prevention of Stroke and Embolism Trial in Atrial Fibrillation study (hereinafter referred to as "ROCKET AF"). The study's findings showed that rivaroxaban was noninferior to warfarin for the prevention of stroke or systemic embolism in patients with non-valvular atrial fibrillation, with a similar risk of major bleeding. However, "bleeding from gastrointestinal sites, including upper, lower, and rectal sites, occurred more frequently in the rivaroxaban group, as did bleeding that led to a drop in the hemoglobin level or bleeding that required transfusion." (Patel, M.R., et al. *Rivaroxaban versus Warfarin in Nonvalvular Atrial Fibrillation*. N.Engl.J.Med. 2011;365:883-91.)

160. Approval of Xarelto for the treatment of DVT and/or PE and the reduction in recurrence of DVT and/or PE in the U.S. was based on the clinical trials known as the EINSTEIN-

DVT, EINSTEIN-PE, and EINSTEIN-Extension studies. The EINSTEIN-DVT study tested Xarelto versus a placebo, and merely determined that Xarelto offered an option for treatment of DVT, with obvious increased risk of bleeding events as compared to placebo. (The EINSTEIN Investigators. *Oral Rivaroxaban for Symptomatic Venous Thromboembolism*. N.Engl.J.Med. 2010;363:2499-510). The EINSTEIN-Extension study confirmed that result. (Roumualdi, E., et al. *Oral rivaroxaban after symptomatic venous thromboembolism: the continued treatment study (EINSTEIN-Extension study)*. Expert Rev. Cardiovasc. Ther. 2011;9(7):841-844). The EINSTEIN-PE study's findings showed that a rivaroxaban regimen was non-inferior to the standard therapy for initial and long-term treatment of PE. However, the studies also demonstrated an increased risk of adverse events with Xarelto, including those that resulted in permanent discontinuation of Xarelto or prolonged hospitalization. (The EINSTEIN- PE Investigators. *Oral Rivaroxaban for the Treatment of Symptomatic Pulmonary Embolism*. N.Engl.J.Med. 2012;366:1287-97.)

161. Defendants use the results of the ROCKET AF study, the RECORD studies, and the EINSTEIN studies to promote Xarelto in their promotional materials, including the Xarelto website, which tout the positive results of those studies. However, Defendants' promotional materials fail to similarly highlight the increased risk of gastrointestinal bleeding and bleeding that required transfusion, among other serious bleeding concerns.

162. Defendants market Xarelto as a new oral anticoagulant treatment alternative to warfarin (Coumadin), a long-established safe treatment for preventing stroke and systemic embolism, in 60 years. Defendants emphasize the supposed benefits of treatment with Xarelto over warfarin, which they refer to as the Xarelto Difference – namely, that Xarelto does not require periodic monitoring with blood tests and does not limit a patient's diet.

163. However, in its QuarterWatch publication for the first quarter of the 2012 fiscal year,

the Institute for Safe Medication Practices ("ISMP") noted that, even during the approval  process, FDA "[r]eviewers also questioned the convenient once-a-day dosing scheme [of  Xarelto], saying blood level studies had shown peaks and troughs that could be eliminated by  twice-a-day dosing."

164.   Importantly, there is no antidote to Xarelto, unlike warfarin. Therefore, in the  event of hemorrhagic complications, there is no available reversal agent. The original U.S. label  approved when the drug was first marketed in the U.S. did not contain a warning regarding the  lack of antidote, but instead only mentioned this important fact in the overdosage section.

165.   Defendants spent significant money in promoting Xarelto, which included at least  $11,000,000.00 spent during 2013 alone on advertising in journals targeted at prescribers and  consumers in the U.S. In the third quarter of the 2013 fiscal year, Xarelto was the number one  pharmaceutical product advertised in professional health journals based on pages and dollars  spent.

166.   As a result of Defendants' aggressive marketing efforts, in its first full year of  being on the market, Xarelto garnered approximately $582 million in sales globally.

167.   Defendants' website for Xarelto claims that over seven million people worldwide  have been prescribed Xarelto. In the U.S., approximately 1 million Xarelto prescriptions had  been written by the end of 2013.

168.   During the Defendants' 2012 fiscal year, Xarelto garnered approximately $658 million  in sales worldwide. Then, in 2013, sales for Xarelto increased even further to more than clear the $1  billion threshold commonly referred to as "blockbuster" status in the pharmaceutical  industry, ultimately reaching approximately $2 billion for the fiscal year. Thus, Xarelto is now  considered the leading anticoagulant on a global scale in terms of sales.

169.   As part of their marketing of Xarelto, Defendants widely disseminated direct-to-consumer advertising campaigns that were designed to influence patients, including Plaintiffs, to  make

inquiries to their prescribing physician about Xarelto and/or request prescriptions for Xarelto.

170.    In the course of these direct to consumer advertisements, Defendants overstated the efficacy of Xarelto with respect to preventing stroke and systemic embolism, failed to adequately disclose to patients that there is no drug, agent, or means to reverse the anticoagulation effects of Xarelto, and that such irreversibility could have permanently disabling, life-threatening and fatal consequences.

171.    On June 6, 2013, Defendants received an untitled letter from the FDA's Office of Prescription Drug Promotion (hereinafter referred to as the "OPDP") regarding its promotional material for the atrial fibrillation indication, stating that, "the print ad is false or misleading because it minimizes the risks associated with Xarelto and makes a misleading claim" regarding dose adjustments, which was in violation of FDA regulations. The OPDP thus requested that Defendants immediately cease distribution of such promotional material.

172.    Prior to Plaintiffs' prescriptions of Xarelto, Plaintiffs became aware of the promotional materials described herein.

173.    Prior to Plaintiffs' prescription of Xarelto, Plaintiffs' prescribing physician received promotional materials and information from sales representatives of Defendants that Xarelto was just as effective as warfarin in reducing strokes in patients with non-valvular atrial fibrillation, as well as preventing DVT/PE in patients with prior history of DVT/PE or undergoing hip or knee replacement surgery, and was more convenient, without also adequately informing prescribing physicians that there was no reversal agent that could stop or control bleeding in patients taking Xarelto.

174.    At all times relevant hereto, Defendants also failed to warn emergency room doctors, surgeons, and other critical care medical professionals that unlike generally-known measures taken to treat and stabilize bleeding in users of warfarin, there is no effective agent to reverse the

anticoagulation effects of Xarelto, and therefore no effective means to treat and stabilize patients who experience uncontrolled bleeding while taking Xarelto.

175.   At all times relevant to this action, The Xarelto Medication Guide, prepared and distributed by Defendants and intended for U.S. patients to whom Xarelto has been prescribed, failed to warn and disclose to patients that there is no agent to reverse the anticoagulation effects of Xarelto and that if serious bleeding occurs, it may be irreversible, permanently disabling, and life-threatening.

176.   In the year leading up to June 30, 2012, there were 1,080 Xarelto-associated "Serious Adverse Event" ("SAE") Medwatch reports filed with the FDA, including at least 65 deaths. Of the reported hemorrhage events associated with Xarelto, 8% resulted in death, which was approximately twofold the risk of a hemorrhage-related death with warfarin.

177.   At the close of the 2012 fiscal year, a total of 2,081 new Xarelto-associated SAE reports were filed with the FDA in its first full year on the market, ranking tenth among other pharmaceuticals in direct reports to the FDA. Of those reported events, 151 resulted in death, as compared to only 56 deaths associated with warfarin.

178.   The ISMP referred to these SAE figures as constituting a "strong signal" regarding the safety of Xarelto, defined as "evidence of sufficient weight to justify an alert to the public and the scientific community, and to warrant further investigation."

179.   Of particular note, in the first quarter of 2013, the number of reported serious adverse events associated with Xarelto (680) overtook that of Pradaxa (528), another new oral anticoagulant, which had previously ranked as the number one reported drug in terms of adverse events in 2012.

180.   Moreover, on a global scale, in the first eight months of 2013, German regulators received 968 Xarelto-related averse event reports, including 72 deaths, as compared to a total of 750 reports and 58 deaths in 2012.

181.   Despite the clear signal generated by the SAE data, Defendants failed to either alert the public and the scientific community, or perform further investigation into the safety of Xarelto.

182.   Defendants original, and in some respects current labeling and prescribing information for Xarelto:

(a)    failed to investigate, research, study and define, fully and adequately, the safety profile of Xarelto;

(b)    failed to provide adequate warnings about the true safety risks associated with the use of Xarelto;

(c)    failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of Xarelto and its effects on the degree of anticoagulation in a patient;

(d)    failed to provide adequate warning that it is difficult or impossible to assess the degree and/or extent of anticoagulation in patients taking Xarelto;

(e)    failed to disclose in the "Warnings" Section that there is no drug, agent or means to reverse the anticoagulation effects of Xarelto;

(f)    failed to advise prescribing physicians, such as the Plaintiff's physician, to instruct patients that there was no agent to reverse the anticoagulant effects of Xarelto;

(g)    failed to provide adequate instructions on how to intervene and/or stabilize a patient who suffers a bleed while taking Xarelto;

(h)    failed to provide adequate warnings and information related to the increased risks of bleeding events associated with aging patient populations of Xarelto users;

(i)    failed to provide adequate warnings regarding the increased risk of gastrointestinal bleeds in those taking Xarelto, especially, in those patients with a prior history of gastrointestinal issues and/or upset;

(j)    failed to provide adequate warnings regarding the increased risk of suffering a bleeding event, requiring blood transfusions in those taking Xarelto;

(k)    failed to provide adequate warnings regarding the need to assess renal functioning prior to starting a patient on Xarelto and to continue testing and monitoring of renal functioning periodically while the patient is on

Xarelto;

(l)    failed to provide adequate warnings regarding the need to assess hepatic functioning prior to starting a patient on Xarelto and to continue testing and monitoring of hepatic functioning periodically while the patient is on Xarelto;

(m)    failed to include a "**BOXED WARNING**" about serious bleeding events associated with Xarelto;

(n)    failed to include a "**BOLDED WARNING**" about serious bleeding events associated with Xarelto; and

(o)    in their "Medication Guide" intended for distribution to patients to whom Xarelto has been prescribed, Defendants failed to disclose to patients that there is no drug, agent or means to reverse the anticoagulation effects of Xarelto and that if serious bleeding occurs, such irreversibility could have permanently disabling, life-threatening or fatal consequences.

183.    During the years since first marketing Xarelto in the U.S., Defendants modified the U.S. labeling and prescribing information for Xarelto, which included additional information regarding the use of Xarelto in patients taking certain medications. Despite being aware of: (1) serious, and sometimes fatal, irreversible bleeding events associated with the use of Xarelto; and 2,081 SAE Medwatch reports filed with the FDA in 2012 alone, including at least 151 deaths, Defendants nonetheless failed to provide adequate disclosures or warnings in their label as detailed in Paragraphs 103 (a – o).

184.    Prior to applying for and obtaining approval of Xarelto, Defendants knew or should have known that consumption of Xarelto was associated with and/or would cause the induction of life-threatening bleeding, and Defendants possessed at least one clinical scientific study, which evidence Defendants knew or should have known was a signal that life-threatening bleeding risk needed further testing and studies prior to its introduction to the market.

185.    Upon information and belief, despite life-threatening bleeding findings in a clinical trial

and other clinical evidence, Defendants failed to adequately conduct complete and proper testing of Xarelto prior to filing their New Drug Application for Xarelto.

186.   Upon information and belief, from the date Defendants received FDA approval to market Xarelto, Defendants made, distributed, marketed, and sold Xarelto without adequate warning to Plaintiffs' prescribing physicians or Plaintiffs that Xarelto was associated with and/or could cause life-threatening bleeding, presented a risk of life-threatening bleeding in patients who used it, and that Defendants had not adequately conducted complete and proper testing and studies of Xarelto with regard to severe side effects, specifically life-threatening bleeding.

187.   Upon information and belief, Defendants concealed and failed to completely disclose its knowledge that Xarelto was associated with or could cause life-threatening bleeding as well as its knowledge that they had failed to fully test or study said risk.

188.   Upon information and belief, Defendants ignored the association between the use of Xarelto and the risk of developing life-threatening bleeding.

189.   Defendants' failure to disclose information that they possessed regarding the failure to adequately test and study Xarelto for life-threatening bleeding risk further rendered warnings for this medication inadequate.

190.   By reason of the foregoing acts and omissions, the Plaintiffs were caused to suffer from life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

191.   By reason of the forgoing acts and omissions, the Consortium Plaintiffs have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

## FIRST CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (NEGLIGENCE)

192.  Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

193.  Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Xarelto into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

194.  Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Xarelto into interstate commerce in that Defendants knew or should have known that using Xarelto created a high risk of unreasonable, dangerous side effects, including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

195.  The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

> (a)  Manufacturing, producing, promoting, formulating, creating, and/or designing Xarelto without thoroughly testing it;

> (b)  Manufacturing, producing, promoting, formulating, creating, and/or designing Xarelto without adequately testing it;

> (c)  Not conducting sufficient testing programs to determine whether or not Xarelto was safe for use; in that Defendants herein knew or should have known that Xarelto was unsafe and unfit for use by reason of the dangers to its users;

(d)  Selling Xarelto without making proper and sufficient tests to determine the dangers to its users;

(e)  Negligently failing to adequately and correctly warn the Plaintiffs, the public, the medical and healthcare profession, and the FDA of the dangers of Xarelto;

(f)  Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, Xarelto;

(g)  Failing to test Xarelto and/or failing to adequately, sufficiently and properly test Xarelto.

(h)  Negligently advertising and recommending the use of Xarelto without sufficient knowledge as to its dangerous propensities;

(i)  Negligently representing that Xarelto was safe for use for its intended purpose, when, in fact, it was unsafe;

(j)  Negligently representing that Xarelto had equivalent safety and efficacy as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(k)  Negligently designing Xarelto in a manner which was dangerous to its users;

(l)  Negligently manufacturing Xarelto in a manner which was dangerous to its users;

(m)  Negligently producing Xarelto in a manner which was dangerous to its users;

(n)  Negligently assembling Xarelto in a manner which was dangerous to its users;

(o)  Concealing information from the Plaintiffs in knowing that Xarelto was unsafe, dangerous, and/or non-conforming with FDA regulations;

(p)  Improperly concealing and/or misrepresenting information from the Plaintiffs, healthcare professionals, and/or the FDA, concerning the severity of risks and dangers of Xarelto compared to other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non- valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for

patients undergoing hip and knee replacement surgery.

196. Defendants under-reported, underestimated and downplayed the serious dangers of Xarelto.

197. Defendants negligently compared the safety risk and/or dangers of Xarelto with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

198. Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of Xarelto in that they:

(a) Failed to use due care in designing and manufacturing Xarelto so as to avoid the aforementioned risks to individuals when Xarelto was used for treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(b) Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Xarelto;

(c) Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of Xarelto;

(d) Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Xarelto;

(e) Failed to warn Plaintiffs of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

(f) Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Xarelto;

(g)   Failed to warn Plaintiffs, prior to actively encouraging the sale of Xarelto, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

(h)   Were otherwise careless and/or negligent.

199.   Despite the fact that Defendants knew or should have known that Xarelto caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute and/or sell Xarelto to consumers, including the Plaintiffs.

200.   Defendants knew or should have known that consumers such as the Plaintiffs would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

201.   Defendants' negligence was the proximate cause of Plaintiffs' injuries, harm and economic loss, which Plaintiffs suffered.

202.   As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

203.   As a result of the foregoing acts and omissions, Consortium Plaintiffs have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

204.   By reason of the foregoing, Plaintiffs have suffered injuries and damages as alleged herein.

## SECOND CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (STRICT PRODUCTS LIABILITY)

205.   Plaintiffs repeat, reiterate, and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more

fully set forth herein.

206.   At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently  acquired the Defendants who have designed, researched, manufactured, tested, advertised,  promoted, marketed, sold and distributed Xarelto as hereinabove described that was used by the  Plaintiffs.

207.   Xarelto was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in  which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

208.   At those times, Xarelto was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Plaintiffs herein.

209.   The Xarelto designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design or formulation in that,  when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the  benefits associated with the design or formulation of Xarelto.

210.   The Xarelto designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design and/or formulation, in that,  when it left the hands of the Defendants, manufacturers, and/or suppliers, it was unreasonably  dangerous, and it was more dangerous than an ordinary consumer would expect.

211.   At all times herein mentioned, Xarelto was in a defective condition and unsafe,  and Defendants knew or had reason to know that said product was defective and unsafe,  especially when used in the form and manner as provided by the Defendants.

212.   Defendants knew, or should have known that at all times herein mentioned, their  Xarelto was in a defective condition, and was and is inherently dangerous and unsafe.

213.   At the time of the Plaintiffs' use of Xarelto, Xarelto was being used for the purposes and in a manner normally intended, namely to reduce the risk of stroke and systemic  embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT  and/or PE,  and for prophylaxis of  DVT  for  patients undergoing  hip and knee  replacement  surgery.

214.   Defendants  with  this  knowledge  voluntarily  designed  its  Xarelto  in  a  dangerous condition for use by the public, and in particular the Plaintiffs.

215.   Defendants had a duty to create a product that was not unreasonably dangerous  for its normal, intended use.

216.   Defendants  created  a  product  unreasonably  dangerous  for  its  normal,  intended use.

217.   The  Xarelto  designed,  researched,  manufactured,  tested,  advertised,  promoted, marketed, sold and distributed by Defendants was manufactured defectively in that Xarelto left  the hands of Defendants in a defective condition and was unreasonably dangerous to its intended  users.

218.   The  Xarelto  designed,  researched,  manufactured,  tested,  advertised,  promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective  and unreasonably dangerous condition in which the Defendants' Xarelto was manufactured.

219.   Defendants designed, researched, manufactured, tested, advertised, promoted,  marketed, sold  and  distributed  a  defective  product  which  created  an  unreasonable  risk  to  the  health of consumers and to the Plaintiffs in particular; and Defendants are therefore strictly liable  for the injuries sustained by the Plaintiffs.

220.   The Plaintiffs could not, by  the exercise of reasonable care, have discovered  Xarelto's defects herein mentioned and perceived its danger.

221.   The  Xarelto  designed,  researched,  manufactured,  tested,  advertised,  promoted, marketed,  sold  and  distributed  by  Defendants  was  defective  due  to  inadequate  warnings  or

instructions, as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to adequately warn of said risk.

222. The Xarelto designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

223. The Xarelto designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects including, life-threatening bleeding, as well as other severe and permanent health consequences from Xarelto, they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and/or promote their product, Xarelto.

224. By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiffs for the manufacturing, marketing, promoting, distribution, and selling of a defective product, Xarelto.

225. Defendants' defective design, manufacturing defect, and inadequate warnings of Xarelto were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

226. That said defects in Defendants' drug Xarelto were a substantial factor in causing Plaintiffs' injuries. As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

227.    As a result of the foregoing acts and omissions, Consortium Plaintiffs have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

228.    By reason of the foregoing, Plaintiffs have suffered injuries and damages as alleged herein.

### THIRD CAUSE OF ACTION
### AS AGAINST THE DEFENDANTS
### (BREACH OF EXPRESS WARRANTY)

229.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

230.    Defendants expressly warranted that Xarelto was safe and well accepted by users.

231.    Xarelto does not conform to these express representations because Xarelto is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants. As a direct and proximate result of the breach of said warranties, Plaintiffs suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

232.    Plaintiffs did rely on the express warranties of the Defendants herein.

233.    Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of Xarelto in recommending, prescribing, and/or dispensing Xarelto.

234.    The Defendants herein breached the aforesaid express warranties, as their drug Xarelto was defective.

235.    Defendants expressly represented to Plaintiffs, Plaintiffs' physicians, healthcare providers, and/or the FDA that Xarelto was safe and fit for use for the purposes intended, that it was

of merchantable quality, that it did not produce any dangerous side effects in excess of those  risks associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT  and/or PE, and for prophylaxis of DVT  for patients undergoing hip and knee  replacement  surgery, that the side effects it did produce were accurately reflected in the warnings and that it  was adequately tested and fit for its intended use.

236.   Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that Xarelto was not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified  and represented by Defendants.

237.   As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe  and  personal injuries which  are  permanent and lasting  in  nature,  physical  pain and  mental  anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and  loss of earnings.

238.   As a result of the foregoing acts and omissions, Consortium Plaintiffs  have suffered damages and harm, including, but not limited to, emotional distress, medical  expenses, other economic harm, as well as a loss of consortium, services, society,  companionship, love and comfort.

239.   By reason of the foregoing, Plaintiffs have suffered injuries and damages  as  alleged herein.

### FOURTH CAUSE OF ACTION
### AS AGAINST THE DEFENDANTS
### (BREACH OF IMPLIED WARRANTIES)

240.   Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if  more fully set forth herein.

241.   At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Xarelto  and/or have recently acquired the Defendants who have manufactured, compounded, portrayed,  distributed, recommended, merchandized, advertised, promoted and sold Xarelto, to reduce the   risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat   DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for   patients undergoing hip and knee replacement surgery.

242.   At the time Defendants marketed, sold, and distributed Xarelto for use by  Plaintiff, Defendants knew of the use for which Xarelto was intended and impliedly warranted  the product to be of merchantable quality and safe and fit for such use.

243.   The Defendants impliedly represented and warranted to the users of Xarelto and  their physicians, healthcare providers, and/or the FDA that Xarelto was safe and of merchantable  quality and fit for the ordinary purpose for which said product was to be used.

244.   That said representations and warranties aforementioned were false, misleading,  and inaccurate in that Xarelto was unsafe, unreasonably dangerous, improper, not of  merchantable quality, and defective.

245.   Plaintiffs, and/or members of the medical community and/or healthcare  professionals did rely on said implied warranty of merchantability of fitness for a particular use  and purpose.

246.   Plaintiffs and Plaintiffs' physicians and healthcare professionals reasonably relied  upon the skill and judgment of Defendants as to whether Xarelto was of merchantable quality  and safe and fit for its intended use.

247.   Xarelto was injected into the stream of commerce by the Defendants in a  defective, unsafe, and inherently  dangerous condition and the products and materials were  expected to and did

reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

248.   The Defendants herein breached the aforesaid implied warranties, as their drug Xarelto was not fit for its intended purposes and uses.

249.   As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

250.   As a result of the foregoing acts and omissions, Consortium Plaintiffs have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

251.   By reason of the foregoing, Plaintiffs have suffered injuries and damages as alleged herein.

### FIFTH CAUSE OF ACTION
### AS AGAINST THE DEFENDANTS
### (FRAUDULENT MISREPRESENTATION)

252.   Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

253.   The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiffs, and/or the FDA, and the public in general, that said product, Xarelto, had been tested and was found to be safe and/or effective to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat DVT and PE, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

254. That representations made by Defendants were, in fact, false.

255. When said representations were made by Defendants, they knew those representations to be false and it willfully, wantonly, and recklessly disregarded whether the representations were true.

256. These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiffs, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe, dispense and/or purchase said product, Xarelto, for use to reduce the risk of stroke and systemic embolism in patients with non- valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiffs herein.

257. At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiffs used Xarelto, the Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

258. In reliance upon said representations, the Plaintiffs were induced to and did use Xarelto, thereby sustaining severe and permanent personal injuries.

259. Said Defendants knew and were aware or should have been aware that Xarelto had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

260. Defendants knew or should have known that Xarelto had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

261. Defendants brought Xarelto to the market, and acted fraudulently, wantonly and

maliciously to the detriment of the Plaintiffs.

262.   As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe  and  personal injuries which  are  permanent and lasting in  nature, physical pain and mental  anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and  loss of earnings.

263.   As a result of the foregoing acts and omissions, the Consortium Plaintiffs  have  suffered damages and harm, including, but not limited to, emotional distress, medical expenses,  other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

264.   By reason of the foregoing, Plaintiffs have suffered injuries and damages as  alleged herein.

### SIXTH CAUSE OF ACTION
### AS AGAINST THE DEFENDANTS
### (FRAUDULENT CONCEALMENT)

265.   Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if  more fully set forth herein.

266.   At all times during the course of dealing between Defendants and Plaintiffs, and/or Plaintiffs' healthcare providers, and/or the FDA, Defendants misrepresented the safety of Xarelto  for its intended use.

267.   Defendants knew or were reckless in not knowing that its representations were false.

268.   In representations to Plaintiffs, and/or Plaintiffs' healthcare providers, and/or the  FDA, Defendants fraudulently concealed and intentionally omitted the following material  information:

> (a)   that Xarelto was not as safe as other forms of treatment for reducing the risk  of stroke and systemic embolism in patients with non-valvular atrial  fibrillation, reducing  the  risk of  recurrence  of DVT

and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(b)    that the risks of adverse events with Xarelto were higher than those with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(c)    that the risks of adverse events with Xarelto were not adequately tested and/or known by Defendants;

(d)    that Defendants were aware of dangers in Xarelto, in addition to and above and beyond those associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(e)    that Xarelto was defective, and that it caused dangerous side effects, including but not limited to life-threatening bleeding, as well as other severe and permanent health consequences, in a much more and significant rate than other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery;

(f)    that patients needed to be monitored more regularly than normal while using Xarelto;

(g)    that Xarelto was manufactured negligently;

(h)    that Xarelto was manufactured defectively;

(i)    that Xarelto was manufactured improperly;

(j)    that Xarelto was designed negligently;

(k)    that Xarelto was designed defectively; and

(l)    that Xarelto was designed improperly.

269.    Defendants were under a duty to disclose to Plaintiffs, and Plaintiffs' physicians, hospitals, healthcare providers, and/or the FDA the defective nature of Xarelto, including but not limited

to the heightened risks of life-threatening bleeding.

270.   Defendants had sole access to material facts concerning the defective nature of the  product and its propensity to cause serious and dangerous side effects, and hence, cause damage  to persons who used Xarelto, including the Plaintiffs, in particular.

271.   Defendants' concealment and omissions of material facts concerning, inter alia, the safety of Xarelto was made purposefully, willfully, wantonly, and/or recklessly, to mislead  Plaintiffs, and Plaintiffs' physicians, hospitals and healthcare providers into reliance, continued  use of Xarelto, and actions thereon, and to cause them to purchase, prescribe, and/or dispense  Xarelto and/or use the product.

272.   Defendants knew that Plaintiffs, and Plaintiffs' physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment  and omissions, and that these included material omissions of facts surrounding Xarelto, as set  forth herein.

273.   Plaintiffs, as well as Plaintiffs' doctors, healthcare providers, and/or hospitals  reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not  include facts that were concealed and/or omitted by Defendants.

274.   As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe  and personal injuries which  are  permanent and lasting  in  nature,  physical  pain and  mental  anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and  loss of earnings.

275.   As a result of the foregoing acts and omissions, Consortium Plaintiffs  have suffered damages and harm, including, but not limited to, emotional distress, medical  expenses, other economic harm, as well as a loss of consortium, services, society,  companionship, love and comfort.

276.   By reason of the foregoing, Plaintiffs have suffered injuries and damages as alleged herein.

## SEVENTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (NEGLIGENT MISREPRESENTATION)

277.  Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

278.  Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiffs, the FDA, and the public in general that said product, Xarelto, had been tested and found to be safe and effective to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

279.  The representations made by Defendants were, in fact, false.

280.  Defendants failed to exercise ordinary care in the representation of Xarelto, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce, in that Defendants negligently misrepresented Xarelto's high risk of unreasonable, dangerous side effects.

281.  Defendants breached their duty in representing Xarelto's serious side effects to the medical and healthcare community, to the Plaintiffs, the FDA and the public in general.

282.  As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

283.  As a result of the foregoing acts and omissions, Consortium Plaintiffs have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

284.   By reason of the foregoing, Plaintiffs have suffered injuries and damages as alleged herein.

**EIGHTH CAUSE OF ACTION AS
AGAINST THE DEFENDANTS
(FRAUD AND DECEIT)**

285.   Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

286.   Defendants conducted research, or lack thereof, and used Xarelto as part of their research.

287.   As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, the Plaintiffs, Plaintiffs' doctors, hospitals, healthcare professionals, and/or the FDA that Xarelto was safe and effective for use as a means to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

288.   As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Plaintiffs.

289.   Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiffs, as well as Plaintiffs' respective healthcare providers and/or the FDA.

290.   The information distributed to the public, the FDA, and the Plaintiffs, by Defendants, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

291.    The information distributed to the public, the FDA, and the Plaintiffs, by Defendants intentionally included representations that Defendants' drug Xarelto was safe and  effective for use to reduce the risk of stroke and systemic embolism in patients with non-valvular  atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT  for patients undergoing hip and knee replacement surgery.

292.    The information distributed to the public, the FDA, and the Plaintiffs, by Defendants intentionally included representations that Defendants' drug Xarelto carried the same  risks, hazards, and/or dangers as other forms of treatment for reducing the risk of stroke and  systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of  recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee  replacement surgery.

293.    The information distributed to the public, the FDA, and the Plaintiffs, by Defendants intentionally included false representations that Xarelto was not injurious to the health and/or safety of its intended users.

294.    The information distributed to the public, the FDA, and the Plaintiffs, by Defendants intentionally included false representations that Xarelto was as potentially injurious to the health and/or safety of its intended users, as other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

295.    These representations were all false and misleading.

296.    Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable  to the Defendants, and results that demonstrated that  Xarelto was not safe as a means of treatment for reducing the risk of stroke and systemic  embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT    and/or  PE,  and for

prophylaxis of DVT for patients undergoing hip and knee replacement surgery, and/or was not as safe as other means of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

297.  Defendants intentionally made material representations to the FDA and the public, including the medical profession, and the Plaintiffs, regarding the safety of Xarelto, specifically but not limited to Xarelto not having dangerous and serious health and/or safety concerns.

298.  Defendants intentionally made material representations to the FDA and the public in general, including the medical profession, and the Plaintiffs, regarding the safety of Xarelto, specifically but not limited to Xarelto being a safe means of reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

299.  It was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and/or the Plaintiffs, to gain the confidence of the public, healthcare professionals, the FDA, and/or the Plaintiffs, to falsely ensure the quality and fitness for use of Xarelto and induce the public, and/or the Plaintiffs to purchase, request, dispense, prescribe, recommend, and/or continue to use Xarelto.

300.  Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiffs that Xarelto was fit and safe for use as treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

301.  Defendants made the aforementioned false claims and false representations with the

intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiffs that Xarelto was fit and safe for use as treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

302.  That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiffs that Xarelto did not present serious health and/or safety risks.

303.  That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiffs that Xarelto did not present health and/or safety risks greater than other oral forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

304.  That these representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

305.  That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiffs, including Plaintiffs' respective healthcare professionals and/or the FDA, and were made in order to induce the Plaintiffs and/or Plaintiffs' respective healthcare professionals to rely upon misrepresentations and caused the Plaintiff to purchase, use, rely on,

request, dispense, recommend, and/or prescribe Xarelto

306.    That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Xarelto to the public at large, and the Plaintiffs in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

307.    That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Xarelto by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Xarelto.

308.    That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiffs, as well as their respective healthcare professionals into a sense of security so that Plaintiffs would rely on the representations made by Defendants, and purchase, use and rely on Xarelto and/or that Plaintiffs' respective healthcare providers would dispense, prescribe, and/or recommend the same.

309.    Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiffs, as well as Plaintiffs' respective healthcare professionals would rely upon the information being disseminated.

310.    Defendants utilized direct to consumer adverting to market, promote, and/or advertise Xarelto.

311.    The Plaintiffs and/or Plaintiffs' respective healthcare professionals did in fact rely on

and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery, and were thereby induced to purchase, use and rely on Defendants' drug Xarelto.

312. At the time the representations were made, the Plaintiffs and/or Plaintiffs' respective healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of Xarelto.

313. The Plaintiffs did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could the Plaintiffs with reasonable diligence have discovered the true facts.

314. Had the Plaintiffs known the true facts with respect to the dangerous and serious health and/or safety concerns of Xarelto, Plaintiffs would not have purchased, used and/or relied on Defendants' drug Xarelto.

315. That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiffs.

316. As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

317. As a result of the foregoing acts and omissions, Consortium Plaintiffs have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love and comfort.

318.    By reason of the foregoing, Plaintiffs have suffered injuries and damages as alleged herein.

## NINTH CAUSE OF ACTION AS AGAINST
## THE DEFENDANTS
## VIOLATION OF ILLINOIS CONSUMER FRAUD
## AND DECEPTIVE PRACTICES ACT

319.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

320.    Defendants have a statutory duty to refrain from making false or fraudulent representations and/or from engaging in deceptive acts or practices in the sale and promotion of Xarelto pursuant to the Illinois Consumer Fraud & Deceptive Practices Act, 815 ILCS 505/1 *et seq*. (hereinafter "the Act"), which prohibits "the use of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact…in the conduct of any trade or commerce" and declares such acts or practices as unlawful.

321.    Defendants engaged in unfair, deceptive, false and/or fraudulent acts and/or practices in violation of the Act through its false and misleading promotion of Xarelto designed to induce Plaintiffs to purchase and use Xarelto

322.    Defendants' conduct as described herein constituted unfair and deceptive acts and practices, including, but not limited to:

(a)    Publishing instructions and product material containing inaccurate and incomplete factual information;

(b)    Engaging in fraudulent or deceptive conduct that creates a likelihood of Misrepresenting the nature, quality, and characteristics about the product; and

(c)    Confusion or misunderstanding.

323.    Defendants misrepresented the alleged benefits of Xarelto, failed to disclose material information concerning known side effects of Xarelto, misrepresented the quality of Xarelto, and otherwise engaged in fraudulent and deceptive conduct which induced Plaintiffs to purchase and use Xarelto.

324.    Defendants uniformly communicated the purported benefits Xarelto while failing to disclose the serious and dangerous side-effects related to the use of Xarelto, its safety, its efficacy, and its usefulness. Defendants made these presentations to physicians, the medical community at large, and to patients and consumers such as Plaintiffs in the marketing and advertising campaign described herein.

325.    Defendants' conduct in connection with Xarelto was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Xarelto.

326.    Defendants' conduct as described above was a material cause of Plaintiff's decision to purchase Xarelto.

327.    As a direct, foreseeable and proximate cause of Defendants; conduct in violation of the Act, Plaintiffs suffered damages, including personal injuries, economic damages, and non-economic damages. Defendants' conduct was further wanton, egregious, and reckless so as to warrant the award of punitive damages.

328.    As a result of the foregoing acts and omissions, the Plaintiffs was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

329.    As a result of the foregoing acts and omissions, Plaintiffs' spouse, has suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium services, society, companionship, love and comfort.

By reason of the foregoing, Plaintiffs have suffered injuries and damages as alleged herein.

### TENTH CAUSE OF ACTION
### VIOLATION OF GEORGIA DECEPTIVE TRADE PRACTICES ACT
### OF O.C.G.A. § 10-1-930 e seq

330.    Plaintiff incorporate by reference the factual allegations set forth above.

331.    Defendants have a statutory duty to refrain from making false or fraudulent representations and/or from engaging in the deceptive acts or practices in the sale and promotion of Xarelto pursuant to the Georgia Fair Business Practices Acts (hereinafter "the Act"), which prohibits and declares such acts or practices as unlawful.

332.    Defendants engaged in unfair, deceptive, false and/or fraudulent acts and/or practices in violation of the Act through their false and misleading promotion of Xarelto designed to induce Plaintiff to purchase and use Xarelto.

333.    Defendants' conduct as described herein constituted unfair and deceptive acts and practices, including, but not limited to:

(a)    Publishing instructions and product material containing inaccurate and incomplete factual information:

(b)    Misrepresenting the nature, quality, and characteristics of the product; and

(c)    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

334.    Defendants misrepresented the alleged benefits of Xarelto, failed to disclose material information concerning known side effects of Xarelto, misrepresented the quality of Xarelto, and

otherwise engaged in the fraudulent and deceptive conduct which induced Plaintiff to purchase and use Xarelto.

335.    Defendants uniformly communicated the purported benefits of Xarelto while failing to disclose the serious and dangerous side effects related to the use of Xarelto, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising and campaign described herein.

336.    Defendants' conduct in connection with Xarelto was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely, and/or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Xarelto.

337.    Defendants' conduct as described above was a material cause of Plaintiffs decision to purchase Xarelto.

338.    As a direct, foreseeable and proximate cause of Defendants' conduct in violation of the Act, Plaintiff suffered damages, including personal injuries, economic damages, and non-economic damages. Defendants' conduct was further wanton, egregious and reckless so as to warrant the award of punitive damages.

339.    As a result of Defendants' foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

340.    As a result of Defendants' foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.

Plaintiff is informed and believes and further alleges that they will in the future be required to obtain further personal, health, medical and/or hospital care, attention and services.

341.    By reason of the foregoing, Plaintiffs have suffered injuries and damages as alleged herein.

## ELEVENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS VIOLATION OF VIRGINIA CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT

342.    Defendants have a statutory duty to refrain from making false or fraudulent representations and/or from engaging in deceptive acts or practices in the sale and promotion of Xarelto pursuant to the Virginia Consumer Protections Acts, Va. Code § 59.1-200(A).

343.    Section 59.1-200(A) of the Virginia Consumer Protection Acts prohibits fraudulent acts or practices committed by a supplier in connection with a consumer transaction. Such prohibited acts or practices include but not limited to:

(a)    Representing that Xarelto has performance characteristics and benefits that it does not have;

(b)    Representing that Xarelto is of a safe quality when it is not.

(c)    Publishing instruction and product material containing inaccurate and incomplete factual information.

(d)    Misrepresenting the nature, quality, and characteristics about the Xarelto and

(e)    Engaging in fraudulent or deceptive conduct concerning Xarelto that creates a likelihood of confusion or misunderstanding.

344.    As manufactures and distributers of Xarelto, Defendants are and have been during all relevant times "suppliers of "goods" and/or "services" in connection with "consumer transaction" as those

terms are defined in § 59.1-198 of the Virginia Consumer Protection Act.

345.    Defendant Virginia Consumer Protections Acts, Va. Code § 59.1-200(A)

346.    By reason of the foregoing, plaintiff has suffered injuries and damages as alleged herein.

## TWELTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS VIOLATION OF KANSAS CONSUMER PROTECTION ACT

347.    Plaintiffs repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

348.    Defendants have a statutory duty to refrain from making false or fraudulent representations and/or from engaging in deceptive acts or practices in the sale and promotion of Xarelto pursuant to the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.* (hereinafter "the Act"), which prohibits deceptive and unconscionable practices in or affecting commerce.

349.    Defendants engaged in unfair, deceptive, false and/or fraudulent acts and/or practices in violation of the Act through its false and misleading promotion of Xarelto designed to induce Plaintiffs to purchase and use Xarelto.

350.    Defendants' conduct as described herein constituted unfair and deceptive acts and practices, including but not limited to:

(a)    Publishing instructions and product material containing inaccurate and incomplete factual information;

(b)    Misrepresenting the nature, quality, and characteristics about the product; and

(c)    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

351.    Defendants misrepresented that alleged benefits of Xarelto, failed to disclose material information concerning known side effects of Xarelto, misrepresented the quality of Xarelto, and

otherwise engaged in fraudulent and deceptive conduct which induced Plaintiff to purchase and use Xarelto.

352.    Defendant uniformly communicated the purported benefits of Xarelto while failing to disclose the serious and dangerous side-effects related to the use of Xarelto, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community at large and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

353.    Defendants' conduct in connection with Xarelto was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Xarelto

354.    Defendants' conduct as described above was a material cause of Plaintiff's decision to purchase Xarelto.

355.    As a direct, foreseeable and proximate cause of Defendants; conduct in violation of the Act, Plaintiffs' suffered damages, including personal injuries, economic damages, and non-economic damages. Defendants' conduct was further wanton, egregious, and reckless so as to warrant the award of punitive damages.

356.    As a result of the foregoing acts and omissions, Plaintiffs was caused to suffer serious and dangerous side effects including but not limited to, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, and financial expenses for hospitalization and medical care.

357.    As a result of the foregoing acts and omissions, Plaintiffs has suffered and incurred damages, including medical expenses and other economic and non-economic damages.

By reason of the foregoing, Plaintiffs' has suffered injuries and damages as alleged herein

## THIRTEENTH CAUSE OF ACTION AS AGAINST THE DEFEDANTS VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE §17200 et seq.

358.    Plaintiff incorporates by reference each of the allegations previously set forth in this Complaint as if fully set forth herein, and further avers the following:

359.    California Business & Professions Code § 17200 provides that unfair competition shall mean and include "all unlawful unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

360.    The acts and practices described above were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of California Business & Professions Code § 17200. The acts of untrue and misleading advertising set forth in presiding paragraphs are incorporated by reference and are, by definition, violations of California Business & Professions Code § 17200. This conduct is set forth fully herein, and includes, but is not limited to:

361.    Representing that Xarelto is safe, fit, and effective for human use, knowing that said representations were false, and concealing that Xarelto had a serious propensity to cause injuries to users:

362.    Purposely downplaying and understanding the health hazards and risks associated with Xarelto"

363.    Engaging in a practice undertaking unlawful, unfair or fraudulent acts by refraining from taking an action that would provide prescribing physicians with appropriate information and protect patients who use their products, including Plaintiff, such as failing to engage in proper pharmacovigilance, signal detection and follow up, review of the literature, regulatory review, updating labels and timely and properly implementing label changes and conducting proper research, tests and studies to ensure the continued safety of their products and taking appropriate action to disseminate to prescribing physicians and healthcare providers appropriate and permitted product information and labels concerning safety

issues and safe prescribing practices for their products.

364.    These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California Business & Professions Code § 17200.

365.    The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public eye in that Defendants continue to engage in that conduct described therein.

366.    As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and prescription of Xarelto in California, sold in large part as a result of the acts and omissions described herein.

367.    Said Plaintiff, pursuant to California Business & Professions Code § 17203, seeks and order of this court compelling the Defendants to Provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

368.    WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory, and punitive damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**FOURTEENTH CAUSE OF ACTION**
**AS AGAINST DEFENDANTS VIOLATION OF CAL. BUSINESS & PROFESSIONS**
**CODE § 17500, et seq.**

369.    Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as follows.

370.    Plaintiff brings this cause of action pursuant to California Business & Professions Code § 17500.

371.    California Business & Professions Code § 17500 provides that it is unlawful for any

person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

372.    At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California Business & Professions Code § 17500. By engaging in the following acts and practices with intent to induce members of the public to purchase and use Xarelto.

373.    Representing that Xarelto is safe, fit and effective for human use, knowing that said representations were false, and concealing that Xarelto had a serious propensity to cause injuries to users;

(a)    Purposely downplaying and understating the health hazards and risks associated with Xarelto.

374.    The foregoing practices constitute false and misleading advertising within the meaning of California Business & Professions Code § 17500.

375.    The acts of untrue and misleading statements by Defendants described herein above present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing and the public will continue to suffer the harm alleged herein.  As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched  by receipt of profits from the sale and prescription of the Xarelto in California, sold in large part as a result of the acts and omissions described herein.

376.    Pursuant to California Business & Professions Code § 17535, Plaintiff seeks an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of the, to cease unfair business practices in the future. Said Plaintiff seeks restitution of the monies collected by Defendants, and each of them, and other injunctive relief to cease such false and misleading advertising in the future.

377.    WHEREFORE, Plaintiff demands judgment against Defendants for compensatory,

statutory, and punitive damages, together with interest, costs of suit, attorney's fees and all such other relief and the Court deems appropriate pursuant to the common law and statutory law.

### FIFTEENTH CAUSE OF ACTION
### AGAINST THE DEFENDANTS VIOLATION OF
### CAL. CIVIL CODE § 1750 et seq.

378.    Plaintiff hereby incorporates by reference al previous paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

379.    Said Plaintiff is informed and believed and thereon allege that Defendants, and each of them, by the acts and misconduct alleged herein, violated the Consumers Legal Remedies Act, California Business & Professions Code § 1750 et. Seq. ("CLRA").

380.    Said Plaintiff hereby seeks injunctive relief as appropriate against Defendants, and each of them, for their violations of California Business & Professions Code § 1750 et. Seq. The CLRA applies to Defendants' actions and conduct described herein because it extends to transactions which are intended to result, or which have resulted, in the sale of goods to consumers.

381.    Plaintiff is a "consumer" within the meaning of California Civil Code § 1761 (d). Defendants have violated, and continue to violate, the CLRA in representing that goods have characteristics and benefits which they do not have, in violation of California Civil Code § 1770(a)(5).

382.    At all times herein alleged Defendants have committed acts of dissemination untrue and misleading statements as defined by California Civil Code § 1770, by engaging in the following acts and practices with intent to induce members of the public to purchase and use Xarelto.

(a)    Representing that Xarelto is safe, fit, and effective for human use, knowing that said representations were false, and concealing that Xarelto had a serious propensity to cause injuries to users:

(b)    Purposely downplaying and understating that health hazards and risks associated

with Xarelto.

383.    Engaging in a practice undertaking unlawful, unfair or fraudulent acts by refraining from taking any action that would provide prescribing physicians with appropriate information and protect patients who use their products, including Xarelto Plaintiffs, such as failing to engage in proper pharmacovigilance, signal detection and follow up, review of the literature, regulatory review, updating labels and timely and properly, implanting label changes and conducting proper research, tests and studies to ensure the continued safety of their products, and taking appropriate action to disseminate to prescribing physicians and healthcare providers appropriate and permitted product information and labels concerning safety issues and safe prescribing practices for their products

384.    The foregoing practices constitute false and misleading advertising and representations within the meaning of California Business & Professions Code § 1770. The acts of untrue and misleading statements by Defendants described herein present a continuing threat to members of the public and individual consumers in that the acts alleged herein are continuous and ongoing, and the public and individual consumers will continue to suffer harm as alleged herein. Unless Defendants are enjoined from continuing to engage in the violations of the CLRA, Plaintiff will continue to be harmed by the wrongful actions and conduct of Defendants. Pursuant to California Business & Professions Code § 1780, said Plaintiff seek an order of this court for injunctive relief calling for Defendants, and each of the, to cease such deceptive business practices in the future.

385.    WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory, and punitive damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SIXTEENTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## (VIOLATION OF THE TEXAS DECEPTIVE TRADE
## PRACTICES ACT)

386.    Plaintiff repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

387.    Defendants have a statutory duty to refrain from making false or fraudulent representations and/or from engaging in deceptive acts or practices in the sale and promotion of Xarelto pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act, Texas Business and Commerce Code Annotated, §§ 17.41 et seq.

388.    Defendants engaged in unfair, deceptive, false and/or fraudulent acts and/or practices in violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Texas Business and Commerce Code Annotated, §§ 17.41 et seq. through its false and misleading promotion of Xarelto designed to induce Plaintiff to purchase and use Xarelto.

389.    Defendants' conduct as described herein constituted unfair and deceptive acts and practices, including, but not limited to:

    (a)    Publishing instructions and product material containing inaccurate and incomplete factual information;

    (b)    Misrepresenting the nature, quality, and characteristics about the product; and

    (c)    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

390.    Defendants misrepresented the alleged benefits of Xarelto, failed to disclose material information concerning known side effects of Xarelto, misrepresented the quality of Xarelto, and otherwise engaged in fraudulent and deceptive conduct which induced Plaintiff to purchase and use Xarelto.

391.    Defendants uniformly communicated the purported benefits of Xarelto while failing to disclose the serious and dangerous side-effects related to the use of Xarelto, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community at large, and to

patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

392. Defendants' conduct in connection with Xarelto was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Xarelto.

393. Defendants' conduct as described above was a material cause of Plaintiff's decision to purchase Xarelto.

394. As a direct, producing, foreseeable and proximate cause of Defendants' conduct in violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Texas Business and Commerce Code Annotated, §§ 17.41 et seq., the Plaintiff suffered damages, including personal injuries, economic damages, and non-economic damages. Defendants' conduct was further wanton, egregious, and reckless so as to warrant the award of punitive damages.

395. As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and person injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization, and loss of earnings.

396. As a result of the foregoing acts and omissions, Plaintiff has suffered and incurred damages, including medical expenses; the loss of accumulations; and other economic and noneconomic damages.

397. As a result of the foregoing acts and omissions, Plaintiff is entitled to court costs and reasonable and necessary attorneys' fees.

398. By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein.

**SEVENTEENTH CAUSE OF ACTION AS
AGAINST DEFENDANTSVIOLATION OF M.G.L. c. 93A**

## DECEPTIVE TRADE PRACTICES AND
## CONSUMER PROTECTION ACT.

399.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

400.    Defendant engaged in trade and commerce within the Commonwealth of Massachusetts.

401.    Defendants' violation of express warranties and misrepresentations constitutes a violation of M.G.L. c. 93A. Defendants' failure to perform and fulfill its promises, representations, and obligations under the product's warranties, constitutes actionable violations.

402.    As described herein, Defendant represented that its product had characteristics, uses and benefits that it did not have.

403.    As described herein, Defendant represented that its product was of a particular standard, quality, and grade that they either knew or should have known was not of the standard, quality, and grade described.

404.    Defendant failed to provide accurate disclosures of all material information before Plaintiff and her providers transacted to use Xarelto.

405.    Defendants' willful and knowing withholding of important safety information and critical product information constitutes a violation of M.G.L. c. 93A.

406.    Defendant actively, knowingly, and deceptively concealed their knowledge of its product's dangerous properties and life-threatening risks. This conduct evidence bad faith and unfair and deceptive practices.

407.    Defendant engaged in the conduct as described herein that created a likelihood of confusion and misunderstanding.

408.    The practices described herein are unfair because they offend public policy as established

by statutes, the common law, or otherwise. Additionally they were unethical and unscrupulous, and caused substantial injury to consumers. Defendant engaged in an unconscionable course of action.

409.    Defendant willfully, wantonly recklessly, and with gross negligence, engaged in the conduct described herein, which they knew was deceptive, in the course of retail business, trade and commerce, and had a deleterious impact on the public interest.

410.    Defendant is liable to Plaintiff for all statutory, direct and consequential damages, and fees and costs, resulting from this breach, including damages.

## EIGHTEENTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (VIOLATION OF CONSUMER PROTECTION LAW)

411.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

412.    Defendants have a statutory duty to refrain from making false or fraudulent representations and/or from engaging in deceptive acts or practices in the sale and promotion of Xarelto pursuant to the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq*., and any other applicable state consumer protection construction (hereinafter "the Acts"), which prohibit deceptive and unconscionable practices and declare such acts or practices as unlawful.

413.    Defendants engaged in unfair, deceptive, false and/or fraudulent acts and/or practices in violation of the Acts through its false and misleading promotion of Xarelto designed to induce Plaintiff to purchase and use Xarelto.

414.    Defendants' conduct as described herein constituted unfair and deceptive acts and practices, including, but not limited to:

       a.    Publishing instructions and product material containing inaccurate and

incomplete factual information;

b.    Misrepresenting the nature, quality, and characteristics about the product; and

c.    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

415.    Defendants misrepresented the alleged benefits of Xarelto, failed to disclose material information concerning known side effects of Xarelto, misrepresented the quality of

416.    Xarelto, and otherwise engaged in fraudulent and deceptive conduct which induced Plaintiff to purchase and use Xarelto.

417.    Defendants uniformly communicated the purported benefits of Xarelto while failing to disclose the serious and dangerous side-effects related to the use of Xarelto, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

418.    Defendants' conduct in connection with Xarelto was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Xarelto.

419.    Defendants' conduct as described above was a material cause of Plaintiff's decision to purchase Xarelto.

420.    As a direct, foreseeable and proximate cause of Defendants' conduct in violation of the Acts, Plaintiff suffered damages, including personal injuries, economic damages, and noneconomic damages. Defendants' conduct was further wanton, egregious, and reckless so as to warrant the award of punitive damages.

421.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious

and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, shortened life expectancy, and expenses for hospitalization and loss of earnings.

422.    As a result of the foregoing acts and omissions, Plaintiff has suffered and incurred damages, including medical expenses; the loss of accumulations; and other economic and non-economic damages.

423.    By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein.

<b>NINETEENTH CAUSE OF<br>ACTION AS AGASINT THE DEFENDANTS<br>VIOLATION OF FLORIDA CONSUMER<br>FRAUD AND DECEPTIVE PRACTICES ACT</b>

424.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

425.    Defendants have a statutory duty to refrain from making false or fraudulent representations and /or from engaging in deceptive acts or practices in the sale and promotion of Xarelto pursuant to the Florida Consumer Fraud & Deceptive Practices Acts, F.S. §501.201 *et seq.* (hereinafter "the Act") which prohibits the use of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact….in the conduct of any trade or commerce" and declares such acts or practices as unlawful.

426.    Defendant engaged in unfair, deceptive, false and/or fraudulent acts and/or practices in violation of the Act through its false and misleading promotion of Xarelto designed to induce Plaintiff to

purchase and use Xarelto

427.    Defendants' conduct as described herein constituted unfair and deceptive acts and practices, including but not limited to:

(a)    Publishing instruction and product material containing inaccurate and incomplete factual information;

(b)    Engaging in fraudulent or deceptive conduct that creates a likelihood of Misrepresenting the nature, quality, and characteristics about the product; and

(c)    Confusion or misunderstanding.

428.    Defendants misrepresented the alleged benefits of Xarelto, failed to disclose material information concerning known side effects of Xarelto misrepresented the quality of Xarelto, and otherwise engaged in fraudulent and deceptive conduct which induced Plaintiff to purchase and use Xarelto.

429.    Defendants uniformly communicated the purported benefits of Xarelto while failing to disclose the serious and dangerous side-effects related to the use of Xarelto, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

430.    Defendants' conduct in connection with Xarelto was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleading, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Xarelto.

431.    Defendants' conduct as described above was material cause of Plaintiff's decision to purchase Xarelto.

432.    As a direct, foreseeable and proximate cause of Defendants' conduct in violation of the Act, plaintiff suffered damages, including personal injuries, economic damages, and non-economic damages. Defendants' conduct was further wanton, egregious, and reckless so as to warrant the award of punitive damages.

433.    As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

434.    By reason of the foregoing Plaintiff has suffered injuries and damages as alleged herein.

**TWENTIETH CAUSE OF ACTION
AS AGAINST THE DEFENDANTS
VIOLATION OF THE ARKANSAS
DECEPTIVE TRADE PRACTICES
ACT**

435.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiff please this Count in the broadest sense available under the law, to include pleading same pursuant to all substantive law that applies to this case, as may be determined by choice of law principles, regardless of whether arising under statute and/or common law.

436.    Plaintiff used Xarelto and suffered ascertainable losses as a result of Defendants' actions in violation of consumer protection laws, including the Arkansas Deceptive Trade Practices Act.

437.    Defendants used unfair methods of competition or deceptive acts or practices that were proscribed by law, including the following:

(a)    Representing that goods or services have characteristics, ingredients, uses, benefits, or quantities that they do not have;

(b)    Advertising goods or services with the intent not to sell them as advertised;

(c)    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding;

(d)    Knowingly making a false representation as to the characteristics. Ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services; or

(e)    Engaging in an unconscionable, false, or deceptive act or practice in business, commerce, or trade.

438.    Defendants violated consumer protection laws, including the Arkansas Deceptive Trade Practices Act, through their use of false and misleading misrepresentations or omissions of material fact relating to the safety of Xarelto

439.    Defendants violated consumer protection laws of various states, including Arkansas.

440.    Defendants uniformly communicated the purported benefits of Xarelto while failing to disclose the serious and dangerous side effects related to the use of Xarelto and of the true state of Xarelto's regulatory status, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community at large, and to patients and consumers, such as Plaintiff, in the marketing and advertising campaign described herein.

441.    Defendants' conduct in connection with Xarelto was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleading, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Xarelto.

442.    As a result of these violations of consumer protection laws, including the Arkansas Deceptive Trade Practices Act, plaintiff has incurred and will incur; serious physical injury including death, pain and suffering, loss of income, loss of opportunity, loss of family and social relationships, loss

of consortium, and medical, hospital, surgical and funeral expense and other expense related to the diagnosis, treatment, and death of Plaintiff for which Defendants are liable.

### TWENTY-FIRST CAUSE OF ACTION AS AGAINST THE DEFENDANTS VIOLATION OF OKLA. STAT. ANN. TIT.15§751 et seq.

443.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

444.    Defendants have a statutory duty to refrain from making false or fraudulent representations and/or from engaging in deceptive acts or practices in the sale and promotion of Xarelto pursuant to the Oklahoma Consumer Protection Acts (hereinafter "the Acts"), which prohibit deceptive and unconscionable practices and declare such acts or practices as unlawful.

445.    Defendants engaged in unfair, deceptive, false and/or fraudulent acts and/or practices in violation of the Acts through its false and misleading promotion of Xarelto designed to induce Plaintiff to purchase and use Xarelto.

446.    Defendants' conduct as described herein constituted unfair and deceptive acts and practices, including, but not limited to:

        d.    Publishing instructions and product material containing inaccurate and incomplete factual information;

        e.    Misrepresenting the nature, quality, and characteristics about the product; and

        f.    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

447.    Defendants misrepresented the alleged benefits of Xarelto, failed to disclose material

information concerning known side effects of Xarelto, misrepresented the quality of

448.    Xarelto, and otherwise engaged in fraudulent and deceptive conduct which induced Plaintiff  to purchase and use Xarelto.

449.    Defendants uniformly communicated the purported benefits of Xarelto while  failing to disclose the serious and dangerous side-effects related to the use of Xarelto, its  safety, its efficacy, and its usefulness. Defendants made these representations to physicians,  the medical community at large, and to patients and consumers such as Plaintiff in the  marketing and advertising campaign described herein.

450.    Defendants' conduct in connection with Xarelto was impermissible and illegal  in that it created a likelihood of confusion and misunderstanding, because Defendants  misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts  regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of  Xarelto.

451.    Defendants' conduct as described above was a material cause of Plaintiff's  decision to purchase Xarelto.

452.    As a direct, foreseeable and proximate cause of Defendants' conduct in  violation of the Acts, Plaintiff suffered damages, including personal injuries, economic  damages, and noneconomic damages. Defendants' conduct was further wanton, egregious,  and reckless so as to warrant the award of punitive damages.

453.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer  serious and dangerous side  effects including, life-threatening  bleeding, as well as other  severe and personal injuries which are permanent and lasting in nature, physical pain and  mental anguish, diminished enjoyment of life, shortened life expectancy, and expenses for   hospitalization and loss of earnings.

454.    As a result of the foregoing acts and omissions, Plaintiff has suffered and  incurred

damages, including medical expenses; the loss of accumulations; and other economic and non-economic damages.

455.    By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein.

## TWENTY –SECOND CAUSE OF ACTION AS AGAINST DEFENDNATS VIOLATION OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT.

456.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

457.    Defendants have a statutory duty to refrain from making false or fraudulent representations and/or from engaging in deceptive acts or practices in the sale and promotion of Xarelto pursuant to the South Carolina Unfair Trade Practices Act, S.C. Code Annotated §39-5-10 *et seq.* (hereinafter "the Act"). Defendants' acts are unlawful

458.    Defendants' acts constitute unfair trade practices in that:

(a)    Defendants engaged in unconscionable commercial practice through deception, fraud and making false promises and misrepresentations;

(b)    Defendants marketed and promoted Xarelto as safe and effective in the absence of any long-term studies confirming safety;

(c)    Defendants failed to disclose to the FDA and the public knowledge of the health hazards posed by the usage of Xarelto;

(d)    Defendants downplayed and understated the health hazards and risks associated with the use of Xarelto;

(e)    Defendants' marketing efforts fostered the aggressive dispensation of this

product; and

(f)    In connection with the sale and advertisement of Xarelto, Defendants:

- Engaged in knowing concealment, suppression and omission of material facts regarding the health hazards created by the use of the product.

459.    Defendants engaged in unfair, deceptive, false and/or fraudulent acts and/or practices in violation of the Act through its false and misleading promotion of Xarelto designed to induce Plaintiff to purchase and use Xarelto.

460.    Defendants misrepresented the alleged benefits of Xarelto, failed to disclose material information concerning known side effects of Xarelto, misrepresented the quality of Xarelto, and otherwise engaged in fraudulent and deceptive conduct which induced Plaintiff to purchase and use Xarelto.

461.    Defendants uniformly communicated the purported benefits of Xarelto while failing to disclose the serious and dangerous side-effects related to the use of Xarelto, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein.

462.    Defendants' conduct in connection with Xarelto was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, cost, safety, efficacy and advantages of Xarelto.

463.    Defendants' conduct as described above was a material cause of Plaintiff's decision to purchase Xarelto.

464.    As a direct, foreseeable and proximate cause of Defendants' conduct in violation of the

Act, Plaintiff suffered damages, including personal injuries, economic damages, and non-economic damages. Defendants' conduct was further wanton, egregious, and reckless so as to warrant the award of treble damages and attorneys' fees as allowed under the Act, as well as punitive damages.

465.    As a result of the foregoing acts and omissions, the Plaintiff was cause to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

466.    By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein.

### TWENTY-THIRD CAUSE OF ACTION
### AS AGAINST THE DEFENDANTS VIOLATION
### OF KENTUCKY CONSUMER
### PROTECTIOIN LAWS

467.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

468.    Defendants have a statutory duty to refrain from making false or fraudulent representations and/or from engaging gin deceptive acts or practices in the sale and promotion of Xarelto pursuant to Ky. Rev. Stat. Ann §367.170.

469.    Defendants engaged in unfair, deceptive, false and/or fraudulent acts and/or practices in violation of Kentucky Consumer Protection Laws through its false and misleading promotion of Xarelto designed to induce Plaintiff to purchase and us Xarelto.

470.    Defendants' conduct as described herein constituted unfair and deceptive acts and practices, including, but not limited to:

(a)    Publishing instructions and product material containing inaccurate and incomplete factual information;

(b)    Engaging in fraudulent or deceptive conduct that creates a likelihood of Misrepresenting the nature, quality, and characteristics about the product; and

(c)    Confusion or misunderstanding.

471.    Defendants misrepresented the alleged benefits of Xarelto, failed to disclose material information concerning known side effects of Xarelto, misrepresented the quality of Xarelto, and otherwise engaged in fraudulent and deceptive conduct which induced Plaintiff to purchase and use Xarelto.

472.    Defendants uniformly communicated the purported benefits of Xarelto while failing to disclose the serious and dangerous side-effects related to the use of Xarelto, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Plaintiff in the marketing and advertising campaign described herein

473.    Defendants' conduct in connection with Xarelto was impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, cost, safety, efficacy and advantages of Xarelto.

474.    Defendants' conduct as described above was a material cause of Plaintiff's decision to purchase Xarelto.

475.    As a direct, foreseeable and proximate cause of Defendants' conduct in violating of Ky. Rev. Stat. Ann §367.170, the Plaintiff suffered damages, including personal injuries, economic damages, and non-economic damages. Defendants' conduct was further wanton, egregious, and reckless so as to warrant the award of punitive damages.

476.    As a result of the foregoing acts and omissions, the Plaintiff was cause to suffer serious

and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, expenses for hospitalization and medical treatment, and loss of earnings.

477.    By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein

### TWENTY-FOURTH CAUSE OF ACTION
### AS AGAINST THE DEFENDANTS
### VIOLATION OF WASHINGTON STATE CONSUMER PROTECTION ACT, RCW 19.86.010 *et se*

478.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

479.    Washington's Consumer Protection Act creates a cause of action for those harmed by unfair competition, which includes any "unfair methods of competition an unfair or deceptive acts of practices in the conduct of any trade or commerce."

480.    Defendants have made numerous misrepresentations to Plaintiff, the healthcare providers, and the general public.

481.    Defendants have made numerous misleading omissions, including their failure to disclose the risk information as described herein, thereby subjecting Plaintiff to extraordinary risk, and actual and severe but unnecessary pain and suffering.

482.    Defendants' business practices related to their products are unlawful because they constitute, *inter alia,* false advertising, intentional misrepresentation, and fraudulent concealment.

483.    As a direct and proximate result of Defendants' unlawful business practices and false advertising, Plaintiff has suffered significant damages, including but not limited to extreme physical injury and actual loss of money or property, and will continue to suffer such damages in the future.

484.    By reason of the foregoing, Plaintiff has suffered injuries and damages as alleged herein.

## TWENTY-FIFTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANTS
## STRICT LIABILITY- FAILURE TO WARN

485.    Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if set forth at length herein.

486.    Defendants have engaged in the business of selling, distributing, supplying, manufacturing, marketing, and/or promoting Xarelto, and through that conduct has knowingly and intentionally placed the same into the stream of commerce with full knowledge that it reaches consumers such as Plaintiffs who ingested it.

487.    Defendants did in fact sell, distribute, supply, manufacture, and/or promote Xarelto to Plaintiffs and to their prescribing physicians. Additionally, Defendant expected the Xarelto that it was selling, distributing, supplying, manufacturing, and/or promoting to reach - and Xarelto did in fact reach - prescribing physicians and consumers, including Plaintiffs and their prescribing physicians, without any substantial change in the condition of the product from when it was initially distributed by Defendant.

488.    At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture such that it was unreasonably dangerous to the user, and was so at the time it was distributed by Defendant and ingested by Plaintiffs.  The defective condition of Xarelto was due in part to the fact that it was not accompanied by proper warnings regarding the possible side effect of life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to  adequately warn of said risk.

489.    This defect caused serious injury to Plaintiffs, who used Xarelto in its intended and foreseeable manner.

490.   At all times herein mentioned, Defendant had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings, and take such steps to assure that Xarelto did not cause users to suffer from unreasonable and dangerous side effects.

491.   Defendant so negligently and recklessly labeled, distributed, and promoted Xarelto that it was dangerous and unsafe for the use and purpose for which it was intended.

492.   Defendant negligently and recklessly failed to warn of the nature and scope of the side effects associated with Xarelto, namely life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to  adequately warn of said risk.

493.   Defendant was aware of the probable consequences of the aforesaid conduct.  Despite the fact that Defendant knew or should have known that Xarelto caused serious injuries, it failed to exercise reasonable care to warn of the dangerous side effect of developing life-threatening bleeding from Xarelto use, even though this side effect was known or reasonably scientifically knowable at the time of distribution. Defendant willfully and deliberately failed to avoid the consequences associated with its failure to warn, and in doing so, Defendant acted with a conscious disregard for the safety of Plaintiffs.

494.   Plaintiffs could not have discovered any defect in the subject product through the exercise of reasonable care.

495.   Defendant, as the manufacturer and/or distributor of the subject product, is held to the level of knowledge of an expert in the field.

496.   Plaintiffs reasonably relied upon the skill, superior knowledge, and judgment of Defendants.

497.   Had Defendants properly disclosed the risks associated with Xarelto, Plaintiffs would have

avoided the risk of life-threatening bleeding and other serious injuries by either not using Xarelto at all or by taking other action, including increased monitoring, to prevent the injuries plaintiffs ultimately sustained.

498.   As a result of the foregoing acts and omissions, Plaintiffs were caused to sufferer serious and dangerous side effects including, life-threatening bleeding, as well as other severe  and person injuries which are permanent and lasting in nature, physical pain and  mental  anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization,  and loss of earnings.

499.   As a result of the foregoing acts and omissions, Consortium Plaintiffs have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love, and comfort.

500.    By reason of the foregoing, Plaintiffs have suffered injuries and damages as  alleged herein.

**TWENTY-SIXTH CAUSE OF ACTION**
**AS AGAINST THE DEFENDANTS**
**(NEGLIGENT FAILURE TO WARN)**

501.   Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation contained in the paragraphs above.

502.   Defendant owed Plaintiffs a duty to warn of any dangerous defects or side effects; a duty to assure its product, Xarelto, did not cause users unreasonable and dangerous risks, reactions, or side effects; and a duty to provide adequate post market surveillance and warnings as it learned of Xarelto's substantial dangers.

503.   Defendant breached its duty of reasonable care to Plaintiff in that Defendant failed to:

a)  Conduct sufficient testing which, if properly performed, would have shown that Xarelto had serious side effects, including higher risks of life-threatening bleeding and other risks; and/or

b)  Include adequate warnings with Xarelto that would alert users to the potential risks and serious side effects the drug; and/or

c)  Warn the Plaintiffs that use of Xarelto carried a risk of life-threatening bleeding and related problems; and/or

d)  Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Xarelto; and/or

e)  Other appropriate warnings.

504.  Defendant should have known that Xarelto caused unreasonably dangerous risks and serious side effects of which the general public would not be aware.  Defendant nevertheless advertised, marketed and promoted its product without adequately warning plaintiffs and their physicians and healthcare providers of the unreasonable risk of life-threatening bleeding associated with use of Xarelto.

505.  As a result of the foregoing acts and omissions, Plaintiffs were caused to sufferer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and person injuries which are permanent and lasting in nature, physical pain and  mental anguish, diminished enjoyment of life, shortened life expectancy, expenses for hospitalization, and loss of earnings.

506.  As a result of the foregoing acts and omissions, Consortium Plaintiffs have suffered damages and harm, including, but not limited to, emotional distress, medical expenses, other economic harm, as well as a loss of consortium, services, society, companionship, love, and comfort.

507.  By reason of the foregoing, Plaintiffs have suffered injuries and damages as alleged herein.

## TWENTY-SEVENTH CAUSE OF ACTION
## WRONGFUL DEATH

508.    Plaintiffs incorporates by reference each and every paragraph of this Complaint as is fully set forth herein and alleges as follows:

509.    Plaintiff Ingrid Billups, individually and as a successor in interest of The Estate of Byron Billups, bring this Court of wrongful death of Byron Billups under Missouri law.

510.    Plaintiff Michelle Cammarata, individually and as a successor in interest of The Estate of Joseph Cammarata, bring this Court of wrongful death of Joseph Cammarata under Missouri law.

511.    Plaintiff Joyce Navarro, individually and as a successor in interest of The Estate of Bettye Dynes, bring this Court of wrongful death of Bettye Dynes under California law.

512.    Plaintiff Devra Edwards, individually and as a successor in interest of The Estate of Henry Edwards, bring this Court of wrongful death of Henry Edwards under Illinois law.

513.    Plaintiff Myreice James, individually and as a successor in interest of The Estate of Tollice Payne, bring this Court of wrongful death of Tollice Payne under Missouri law.

514.    Plaintiff Patricia Shoulders, individually and as a successor in interest of The Estate of Frank Shoulders, bring this Court of wrongful death of Frank Shoulders under Missouri law.

515.    Plaintiff Alberta Stoltz, individually and as a successor in interest of The Estate of Thomas Stoltz, bring this Court of wrongful death of Thomas Stoltz under Missouri law.

516.    At all times hereto, Defendants owed a duty to Decedent to protect Decedent against reasonably foreseeable harms that a prudent person would anticipate were likely to result from the Defendants' acts or omissions.

517.    Defendants breached that duty when they acted in the negligent and/or tortious manner set forth in paragraphs above.

518.    Defendants' negligent and tortious conduct was the direct and proximate cause of Decedent's death.

519.    If death had not ensued, Decedent would have been entitled to maintain a cause of action and recover damages against Defendants because of the above alleged negligent and tortious conduct.

520.    As a direct, foreseeable and proximate result of Defendants' conduct, Decedent's estate as incurred medical and funeral and burial expenses.

521.    In addition, Plaintiffs demand payment for all economic losses suffered by the Decedent's survivors, including costs of administration and other expenses reasonably associated with the Decedent's death.

522.    The claims for Wrongful Death, Survival, and/or those other claims available under applicable law, set forth herein are hereby asserted on behalf of all persons having such claims, including Decedent's surviving spouse and surviving children.

523.    Plaintiffs' claim damages of Defendants under and by virtue of California and Missouri Wrongful Death statutes for the pecuniary value of future services, support, society, comfort, and contribution of the Decedent that would have been rendered to the wrongful death beneficiaries for the expected remainder of their lives.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all other relief as the Court deems proper.

## <u>TWENTY-EIGHTH CAUSE OF ACTION</u>
### <u>(LOSS OF CONSORTIUM)</u>

524.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

525. Plaintiffs JAMES BAKER, TRACY BLUM, ELIAS BROWN, BEVERLY BROWN, GENE BRUCE, MARILYN CANADAY, ROSE DAHMS, WILLIAM HEFTY,

STANLEY DONDLE, SUSAN EVANS, BILLIE HARRIS, DORIS HILDEBRANDT, TINA TRACY, KATHY HUMPHRIES, GEORGE JAMISON, JOSEPHINE JOHNSON, VICKIE LECHO, DELORES LEWIS, KEITH LIBBY, DOROTHY MAINIERI, EVAUGHN MCBRIDE, NELLIE MICHEL, ORALNDS MOORE, WILMA MULDER, THOMAS MURPHY, JIMMY MURPHY, KEITH ASH, JUDY O'DELL, VICKIE PRICE, LONIE REVELS, BARBARA ROSS, LINDA SCHOEN, CHERYL SCHWINDT, CAROL SEVIER, VICKI SIMPSON, HENRY STEIN, MARGARET STEINHEIMER, PAUL STRAUTMANN, JOHN STRAW,  ANDY WALKER, AND AD MIMS, respectively, were at all times  relevant, and continue to be, husband and wife.

526.    Plaintiffs have suffered injuries and damages as alleged herein. Consortium Plaintiffs were married to the respective Plaintiffs at the time of their injuries from Xarelto, and continue to be married to the respective Plaintiffs after they sustained those injuries described herein.

527.    As a direct and proximate result of the injuries and injurious consequences suffered by Plaintiffs, Consortium Plaintiffs have suffered damages and harm, including but not limited to emotional distress, medical expenses and other economic harm, as well as lost consortium of their respective spouses, which includes society, services, love, comfort, companionship, and sexual gratification and affection, and will suffer a loss of these services in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants on each of *the* above-referenced claims and Causes of Action and as follows:

1.    Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2.      Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determined at trial of this action;

3.      Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

4.      Prejudgment interest;

5.      Postjudgment interest;

6.      Awarding Plaintiffs reasonable attorneys' fees;

7.      Awarding Plaintiffs the costs of these proceedings; and

8.      Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand trial by jury as to all issues.

Respectfully Submitted,

Dated: May 17, 2016

BROWN AND CROUPPEN, P.C.

_____
SETH SHARROCK WEBB, # 51236
211 N. Broadway, Suite 1600
St. Louis, Missouri  63102
314-421-0216
314-421-0359 facsimile
sethw@getbc.com
**ATTORNEY FOR PLAINTIFF**